Deborah R. Rosenthal (# 184241)
drosenthal@simmonsfirm.com
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (415) 536-3986

Greg F. Coleman*
greg@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080; Fax: (865) 522-0049

Daniel K. Bryson*
Dan@wbmllp.com
J. Hunter Bryson*
Hunter@wbmllp.com
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan St.
Raleigh, NC 27603
Tel: 919-600-5000; Fax: 919-600-5035
*pro hac vice to be submitted*

*Attorneys for Plaintiff, Geniva O'Keefe*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENIVA O'KEEFE, on behalf of herself and all others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>PICK FIVE IMPORTS d/b/a MAXI-MATIC USA, INC.,<br><br>     Defendant. | Case No.: _____<br><br>**CLASS ACTION COMPLAINT AND COMPLAINT FOR DAMAGES**<br><br>**(Demand for Jury Trial)** |

Plaintiff Geniva O'Keefe ("Plaintiff"), on behalf of herself and all others similarly situated, through their undersigned counsel, bring this Class Action

Complaint ("Complaint") against Defendant Pick Five Imports, Inc. d/b/a Maxi-Matic USA, Inc. ("Maxi-Matic" or "Defendant").  The following allegations are based upon investigation by Plaintiff's counsel and upon personal knowledge as to Plaintiff's own facts.

## I.  NATURE OF THE ACTION

1.    According to Maxi-Matic U.S.A.'s self-description on the International Housewares Association website, "Maxi-Matic USA has been an established provider of small kitchen electrics and other household items for more than 30 years. . . .Maxi-Matic USA, a subsidiary of Pick Five Imports, Inc, is an aggressive global consumer products company that designs, manufactures, and markets nationally and internationally. We strive to provide the best consumer products under world-class brands such as Elite Cuisine by Maxi-Matic, Elite Gourmet by Maxi-Matic, Elite Platinum by Maxi-Matic, Elite Home by Maxi-Matic, Maxi-Sonic and Mr. Freeze. Maxi-Matic USA is in a period that is exciting and innovative. The company delivers products with the best quality and pricing in today's market. This has been the foundation of our success to the present and our commitment to the future."[1]

2.    Despite Maxi-Matic's claim of "striv[ing] to provide the best consumer products" and being committed to "deliver[ing] products with the best quality and pricing in today's market," it designed, manufactured, marketed, and sold online or through third-party retailers a high-powered pressure cooker called the "Maxi-Matic Elite Bistro Pressure Cooker, Model Number EPC-808P" (hereinafter, the "Pressure Cooker"), that suffers from a serious and dangerous design defect.

3.    Specifically, during ordinary and routine operation, the Pressure Cooker generates extreme heat and steam.  According to the Owner's Manual

---

[1] https://www.housewares.org/housewaresconnect365/detail?com_uid=58294 (last viewed on October 10, 2017).

accompanying the Pressure Cooker, as a "safety feature, the lid will not open unless all pressure is released."[2] When the defect manifests itself, however, the built-up pressure and steam trapped inside the Pressure Cooker causes its scalding hot contents to burst and erupt from the appliance when the lid is opened by the consumer, resulting in significant and painful personal injury to the consumer.

4.     This defect includes, without limitation, a defective lid locking mechanism. Namely, the lid locking safety feature of the Pressure Cooker is easily overcome, allowing the lid to be rotated and removed when there is still pressure inside the unit. Another Defect involves the ability of the Pressure Cooker to fully pressurize without the lid being securely attached, which can result in the lid explosively separating from the cooker without warning. The internal pressure can cause the contents to erupt from the Pressure Cooker when it is being used for its intended purpose, discharging the scalding hot contents onto unsuspecting consumers, resulting in significant injuries (hereinafter, the "Defect").  Regardless of whether the Defect manifests itself, for all Pressure Cookers sold by Maxi-Matic, the Defect poses a serious safety risk to consumers and the public.

5.     The Pressure Cooker models at issue in this case include, but are not limited to, the Maxi-Matic Model Number EPC-808P and all other Maxi-Matic Elite Bistro Pressure Cooker models sold by Maxi-Matic.

6.     At all relevant times, Maxi-Matic knew or should have known of the Defect but nevertheless sold the Pressure Cooker to consumers, failed to warn consumers of the serious safety risk posed by the Defect, and failed to recall the dangerously defective Pressure Cooker despite the risk of significant injuries to consumers as well as the failure of the product.

7.     As a direct and proximate result of Maxi-Matic's concealment of the Defect, failure to warn customers of the Defect and of the inherent safety risk posed by the Pressure Cooker, failure to remove the defective Pressure Cooker

---

[2] Exhibit A (Maxi-Matic's Elite Bistro Pressure Cooker Owner's Manual).

from the stream of commerce, and failure to recall or remedy the Defect, Plaintiff purchased and used Maxi-Matic's defective and unsafe Pressure Cooker when she otherwise would not have made such a purchase or would not have subsequently used the Pressure Cooker.

8.    Plaintiff's Pressure Cooker failed as a result of the Defect when Plaintiff opened the lid to her Pressure Cooker, causing the scalding hot contents to erupt from the appliance, and resulting in significant and painful personal injury and property damage.

9.    Plaintiff's and all Class members' Pressure Cookers contain the same Defect posing the same substantial safety risk to consumers and the public. Maxi-Matic's Pressure Cooker cannot be used safely for its intended purpose of preparing meals at home.

## II. JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interest and costs, and this is a class action in which Maxi-Matic USA and more than two-thirds of the proposed plaintiff class are citizens of different states.

11.    This Court may exercise jurisdiction over Maxi-Matic USA because it has located its American headquarters in California; it is registered to conduct business in California.

12.    Maxi-Matic USA and Pick Five Imports, Inc. have sufficient minimum contacts in California, as they intentionally avail themselves of the markets within California through the promotion, sale, marketing, and distribution of their pressure cooker products, thus rendering the exercise of jurisdiction by this Court proper and necessary.

13.     Venue is proper in this District under 28 U.S.C. § 1391 because Maxi-Matic USA is headquartered in this district, Pick Five Imports, Inc. is a foreign entity, and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## III.  PARTIES

14.     Plaintiff Geniva O'Keefe is a resident and citizen of Lecanto, Florida. In early 2016, her mother, as her agent, purchased for her a new Maxi-Matic Elite Bistro Pressure Cooker, Model Number EPC-808P), from the Home Shopping Network.   Plaintiff O'Keefe suffered substantial and painful injury when her Pressure Cooker failed during normal use as a result of the Defect in Halls, Tennessee.

15.     Defendant Pick Five Imports, Inc. d/b/a Maxi-Matic USA, Inc. is a foreign for-profit corporation, organized and existing under the laws of the State of California.  Defendant has its principal office in the State of California, which is located in Industry, California. Pick Five Imports, Inc. also conducts business under the name "Maxi-Matic, USA, Inc." Maxi-Matic designs, manufacturers, markets, and sells the Pressure Cooker online and through third-party retailers throughout the United States.

## IV.  FACTUAL ALLEGATIONS

16.     Maxi-Matic touts itself as "an established provider of small kitchen electrics and other various household items for more than 25 years."[3]

17.     Maxi-Matic is engaged in the business of designing, manufacturing, warranting, marketing, advertising, and selling the Pressure Cooker.

18.     The Pressure Cooker is used for food preparation by means of boiling liquids inside a sealed vessel that produces steam, which is trapped inside to create pressure and superheat the contents.  The resulting temperatures are intended to

---

[3] https://www.dsmoz.com/maxi-matic/(last visited November 9, 2017).

reduce cooking time while capturing more nutrients than is possible with other cooking methods.

19.   In the Pressure Cooker's Owner's Manual and other written documents authored by Maxi-Matic, Maxi-Matic expressly warrants that the Pressure Cooker is free from defects, made for years of dependable operation, and is manufactured from merchantable materials and workmanship.

20.   According to its website, Maxi-Matic states that it has been an established provider of small kitchen electrics and other various household items for more than 25 years. Over the years, the company has added many more products to its portfolio and earned a reputation as a 'Can Do' company."[4]

21.   "Maxi-Matic delivers products for every room in your house with the best quality and pricing in today's market. This has been the foundation of our success to the present and our commitment to the future."[5]

22.   In the owner's manual, Maxi-Matic emphasizes that the consumer should "[g]ently tap the [v]alve (3) using an oven mitt or utensil. If it is loose and turns easily and no steam is released from the [v]alve, then all pressure has been released. As a safety feature, the lid will not open unless all pressure is released. Do not force the lid open." Ex. A. Unfortunately for Plaintiff and other class members, this safety feature was not present in the Pressure Cookers.

23.   Plaintiff and the Class purchased their Pressure Cookers reasonably believing they were properly designed and manufactured, free from defects, and safe for their intended use.

24.   Plaintiff and the Class used their Pressure Cookers for their intended purpose of preparing meals at home in a manner reasonably foreseeable by Maxi-Matic.  Plaintiff and the Class, however, are now unable to use their Pressure Cookers for their intended purpose, or are required to place themselves and their

---

[4] https://www.dsmoz.com/maxi-matic/(last visited November 9, 2017).
[5] *Id.*

families at risk when using them, because the Defect renders the Pressure Cooker unsafe by allowing a dangerous level of pressure to accumulate, causing the hot contents to spontaneously erupt out.

25.     The Pressure Cooker suffers from a design Defect that poses an unreasonable risk of injury during normal use.

26.     Maxi-Matic knew or should have known of the Defect and of the serious safety risk it posed to consumers and the public, but chose to conceal knowledge of the Defect from consumers who purchased the Pressure Cooker. Maxi-Matic continues to remain silent regarding the Defect and continues to sell the Pressure Cooker to unsuspecting consumers.

27.     As a result of Maxi-Matic's conduct, Plaintiff and the Class have suffered damages, including, without limitation: (a) the purchase price of the Pressure Cooker, as Plaintiff and the Class would not have purchased the product had they been informed of the Defect; (b) their failure to receive the benefit of their bargain; (c) their overpayment for the Pressure Cooker; (d) the diminished value of the Pressure Cooker; (e) the costs of repair or replacement of the Pressure Cooker; (f) damages to real and/or personal property; and (g) damages for personal injuries.

## ADDITIONAL SPECIFICS CONCERNING THE DEFECT

28.     Maxi-Matic's Pressure Cooker has a design Defect that causes the product to malfunction during its expected useful life. This section of the Complaint sets forth specifics concerning the Defect.

29.     Based upon Plaintiff's Counsel's investigation, the Defect includes, without limitation, a defective lid locking mechanism. Namely, the lid locking safety feature of the Pressure Cooker is easily overcome, allowing the lid to be rotated and removed when there is still pressure inside the unit. Another Defect includes the ability of the Pressure Cooker to fully pressurize without the lid being securely attached and can result in the lid explosively separating from the cooker unexpectedly. The internal pressure can cause the contents to erupt from the

Pressure Cooker when it is being used for its intended purpose, discharging the scalding hot contents onto unsuspecting consumers, resulting in significant injuries.

30.     Upon information and belief, Defects related to the pressurization of an insecurely-attached lid and the ability to rotate the lid on a pressurized cooker were so dangerous to consumers that Maxi-Matic corrected them in later models of Maxi-Matic Bistro and Platinum cookers. Specifically, newer Maxi-Matic Pressure Cooker models have float valves that are red in color and do not enable the user to open the lid of the unit despite internal pressure sufficient to extend the float valve. Upon information and belief, recent models of Maxi-Matic Platinum model numbers EPC-808 and EPC-1013R have the red colored float valve that appears to have corrected the some of the above-mentioned Defects, thus evidencing a safer and more feasible design. However, no recall or notice was issued about the dangers of the earlier design.

31.     The Defect, which allows users to open the Pressure Cooker while it still contains pressure, demonstrates the ineffectiveness of the "lid safety device" that Maxi-Matic touts as one of the Pressure Cookers' built-in safety features.

32.     The Defect manifests itself during the expected useful lives of the Pressure Cooker, within and without the warranty periods, preventing the Pressure Cooker from being used as intended, and creating an unreasonable risk of personal injury.

### PLAINTIFF O'KEEFE'S EXPERIENCE

33.     On or about January 2016, Plaintiff's mother purchased two Pressure Cookers from Home Shopping Network ("HSN") for herself and for Plaintiff.

34.     Plaintiff used the Pressure Cooker on a number of occasions to make a variety of meals for herself and her family without any issues.

35.     On or about April 28, 2016, Plaintiff used her Pressure Cooker to prepare chicken and dumplings for her family.  Having read and understood the

instructions and having relied on Maxi-Matic's representations that the product was safe, functional, and ready for use, she selected the default cook original setting and set it to cook for 15 minutes.

36.     Plaintiff, acting pursuant to the instructions in the Owners' Manual, attempted to depressurize the Pressure Cooker by turning the pressure release valve. Plaintiff heard and observed steam escaping from the Pressure Cooker. Thereafter, Plaintiff let the Pressure Cooker continue to "depressurize" for another 10 to 15 minutes as she watched a movie with her daughters. Thus, according to the instructions in the Owners' Manual, Plaintiff believed her Pressure Cooker was safe to open.

37.     However, Plaintiff's Pressure Cooker was not safe to open. Unbekownst to her, the Pressure Cooker still retained a significant and dangerous amount of pressure inside the appliance. When Plaintiff attempted to open the pressure cooker's lid, scalding hot contents erupted out, spraying all over Plaintiff's person and kitchen.

38.     Unbeknownst to Plaintiff, the "safety" locking mechanism on her Pressure Cooker had not engaged, which enabled her to open the Pressure cooker despite the significant amount of pressure that remained inside.

39.     As a result and pictured below, Plaintiff suffered serious second and third degree burns to her arm, stomach, and leg.  She has been to the emergency room on three occasions and has had to undergo numerous follow-up appointments in order for treatment and wound care.

40.     Today, Plaintiff currently lives with pain and discomfort from burn marks and has significant scarring from the scalding water that erupted from the Pressure Cooker.

41.     The following photographs are true and accurate depictions of the injuries Plaintiff sustained:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



*Photograph 1*



*Photograph 2*



*Photograph 3*

22  **<u>MAXI-MATIC'S NEGLIGENT AND INTENTIONAL CONDUCT</u>**

23      42.    Maxi-Matic failed to adequately design, manufacture, and/or test the

24  Pressure Cooker to ensure it was free from the Defect before offering it to sale to

25  Plaintiff and the Class, despite its duty to do so.

26      43.    The Defect poses a serious and immediate safety risk to consumers

27  and the public and has caused or will cause Plaintiff's and Class members'

28  Pressure Cookers to fail during their expected useful lives**.**

44.     Maxi-Matic's Pressure Cooker should have been usable for its intended purpose during its expected useful life.  The Defect, however, existed at the time that the Pressure Cooker was sold to Plaintiff and the Class, and the Defect immediately rendered the Pressure Cooker unfit for the ordinary and intended purpose for which it is marketed and sold.

45.     If the Pressure Cooker did not suffer from the Defect, Plaintiff and the Class would not have suffered the damages set forth in this Complaint.

46.     Maxi-Matic has a duty to protect consumers by warning them that the Defect poses unreasonable risks of personal injury and/or property damage.

47.     Nonetheless, even though Maxi-Matic knew or should have known of the Defect, it chose to conceal the existence of the Defect, continued to sell the Pressure Cooker, and failed to remove the Pressure Cooker from the marketplace. Maxi-Matic took these actions to realize the substantial financial benefits of selling the defective Pressure Cooker to the unsuspecting public.

48.     Maxi-Matic knew or should have known that consumers including Plaintiff and the Class: (a) were unaware of the Defect and could not reasonably be expected to discover the Defect until their Pressure Cookers failed; (b) expected to use the Pressure Cooker in their homes without putting their safety and property at risk; and (c) expected Maxi-Matic to disclose any Defect that would prevent the Pressure Cooker from safely performing its intended purpose, as such disclosure by Maxi-Matic would impact a reasonable consumer's decision whether to purchase the Pressure Cooker.

49.     As a result of Maxi-Matic's concealment of the Defect, Class members remain unaware of the existence of the Defect and that it poses an unreasonable risk of personal injury and/or property damage during normal use.

50.     Had Plaintiff and Class members been made aware of the Defect, they would not have purchased the Pressure Cooker or would have paid significantly less for it.

## MAXI-MATIC'S ACTUAL OR CONSTRUCTIVE KNOWLEDGE OF THE DEFECT

51.     Maxi-Matic knew or should have known when it sold the Pressure Cooker to the public that it suffered from the Defect, and that the Defect caused the Pressure Cooker to function improperly during its expected useful life, represented an unreasonable risk that the Pressure Cooker would erupt and discharge scalding hot liquids and contents, and might result in significant personal injury and/or property damage to consumers and the public.

52.     Maxi-Matic's knowledge of these facts is established through, *inter alia*, civil complaints filed against Maxi-Matic and online postings complaining that the Pressure Cooker failed during normal use.  Despite its knowledge, Maxi-Matic did not remedy or eliminate the Defect in the Pressure Cooker or remove it from the stream of commerce.

53.     In August 2016, a complaint was filed against Maxi-Matic in the Circuit Court for the Sixth Judicial Circuit in and for Pasco County, Florida, alleging that an Elite Platinum 8qt. Digital Pressure Cooker unexpectedly failed and discharged scalding hot liquid onto the plaintiff.  *See Harkins v. Maxi-Matic Products, Inc. et al.*, 8:16-cv-02362-MSS-MAP (M.D. Fla).

54.     In June 2017, a complaint was filed against Maxi-Matic in the United States District Court for the Southern District of New York, alleging that an Elite Platinum 8qt. Digital Pressure Cooker unexpectedly failed and discharged scalding hot liquid onto the plaintiff.  *See Brudner et al. v. Pick Five Imports, Inc.*, **7**:17-cv-04856-KMK (S.D. NY).

55.     In May 2017, a complaint was filed against Maxi-Matic in the United States District Court for the Western District of Texas, alleging that an Elite Platinum 8qt. Digital Pressure Cooker unexpectedly failed and discharged scalding hot liquid onto the plaintiff.  *See Ferguson v. Pick Five Imports, Inc. et al.*, 1:17-cv-00498-LY (W.D. TX.).

56.     In conjunction with Maxi-Matic's experience designing and selling the Pressure Cooker, these facts illustrate that Maxi-Matic knew or should have known of the Defect.

57.     Maxi-Matic has a duty to disclose the Defect and to not conceal the Defect from Plaintiff and Class members.  Maxi-Matic's failure to disclose, or active concealment of, the Defect places Plaintiff and Class members at risk of personal injury and/or property damage.

58.     Maxi-Matic is currently still selling the defective Pressure Cooker, concealing the Defect, failing to notify consumers of the Defect, and failing to recall the Pressure Cooker.

59.     Moreover, Maxi-Matic continues to falsely represent through written warranties that the Pressure Cooker is free from defects, is of merchantable quality, and will perform dependably for years.

60.     When corresponding with customers, Maxi-Matic does not disclose that the Pressure Cooker suffers from the Defect.  As a result, reasonable consumers, including Plaintiff and Class members, purchased and used, and continue to purchase and use, the Pressure Cookers in their homes even though it is unsafe to do so.

61.     Maxi-Matic has wrongfully placed on Plaintiff and Class members the burden, expense, and difficulty involved in discovering the Defect, repairing and replacing the Pressure Cooker, and paying for the cost of damages caused by the Defect.

## **CLASS ALLEGATIONS**

62.     Plaintiff brings this action against Maxi-Matic individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3) on behalf of:

> All persons, or their agents, in the United States who purchased or own a Maxi-Matic Elite Bistro EPC 808 Pressure Cooker (the "Nationwide Class").

63.     Plaintiff   further   brings   this   action   on   behalf   of:

All persons, or their agents, who reside in Florida who purchased or own a Maxi-Matic Elite Bistro EPC 808 Pressure Cooker (the "Florida Class").

64.     The Nationwide Class and the Florida Class are collectively referred to herein as the "Class" or "Classes."   Excluded from the Classes are: (a) any judge presiding over this action and members of their family; and (b) all officers, directors and employees of Maxi-Matic.

65.     *Numerosity*:   The members of each Class are so numerous that joinder of all members is impracticable.   While the exact number of Class members is presently unknown, each Class consists of thousands of people.   The exact number of Class members can be determined by Maxi-Matic's sales information and other records.

66.     *Commonality*:   Common questions of law and fact exist as to all members of each Class, including, without limitation:

a.     Whether the Pressure Cooker designed and sold by Maxi-Matic possesses a material defect;

b.     Whether the Defect creates an unreasonable risk that the Pressure Cooker will trap built-up pressure and cause the product to fail;

c.     Whether Maxi-Matic knew or should have known that the Pressure Cooker possessed the Defect at the time of sale;

d.     Whether Maxi-Matic fraudulently concealed the Defect;

e.     Whether Maxi-Matic breached express warranties relating to the Pressure Cooker;

f.   Whether Maxi-Matic breached implied warranties of merchantability relating to the Pressure Cooker;

g.   Whether the Defect resulted from Maxi-Matic's negligence;

h.   Whether Maxi-Matic is strictly liable for selling the Pressure Cooker;

i.   Whether Plaintiff and Class members are entitled to damages;

j.   Whether Plaintiff and Class members are entitled to replacement or repair of their defective Pressure Cooker; and

k.   Whether Plaintiff and Class members are entitled to equitable relief, including an injunction requiring that Maxi-Matic engage in a corrective notice campaign and/or a recall.

67.   *Typicality*:  Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct by Maxi-Matic as the claims of all Class members.  Plaintiff's and Class members' claims all arise out of Maxi-Matic's design and sale of the defective Pressure Cooker that has created a significant safety risk to consumers, and from Maxi-Matic's failure to disclose the Defect.

68.   *Adequacy of Representation*:  Plaintiff is committed to pursuing this action and has retained competent counsel experienced in consumer and product liability class action litigation.  Accordingly, Plaintiff and her counsel will fairly and adequately protect the interests of the Class members.

69.   *Injunctive/Declaratory Relief*:  The elements of Rule 23(b)(2) are met.  Maxi-Matic will continue to commit the unlawful practices alleged herein, and Class members will remain at an unreasonable and serious safety risk as a result of the Defect.  Maxi-Matic has acted and refused to act on grounds that apply generally to the Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the Class as a whole.

70.   *Predominance*:   The elements of Rule 23(b)(3) are met.   The common questions of law and fact enumerated above predominate over the questions affecting only individual Class members, and a class action is the superior method for the fair and efficient adjudication of this controversy.   The likelihood that individual Class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.   Serial adjudication in numerous venues is not efficient, timely, or proper.   Judicial resources will be unnecessarily depleted by resolution of individual claims. Joinder on an individual basis of hundreds or thousands of claimants in one suit would be impractical or impossible. Individualized rulings and judgments could result in inconsistent relief for similarly-situated plaintiffs.

## TOLLING OF THE STATUTES OF LIMITATIONS

71.   The claims alleged herein accrued upon the discovery of the Defect which manifests itself when the Pressure Cooker fails.   Because the Defect is hidden and Maxi-Matic failed to disclose the true character, nature, and quality of the Pressure Cooker, Plaintiff and the Class members did not discover, and could not have discovered, the Defect through reasonable and diligent investigation. Thus, any applicable statutes of limitations have been tolled by Maxi-Matic's knowledge, misrepresentation, and/or concealment and denial of the facts as alleged herein. Plaintiff and the Class members could not have reasonably discovered the Defect before it manifests. Further, as evidenced herein, Maxi-Matic, through its correction of the defect in its later Pressure Cooker models, illustrates their knowledge of the Defect. Maxi-Matic's failure to recall the Elite Bistro despite this knowledge illustrates their preference of profits rather than consumer safety. As a result of Maxi-Matic's active and continuing concealment of the Defect, through its own testing mechanisms, consumer complaints, and failure to inform Plaintiff and the Class of the Defect, any and all statutes of limitations otherwise applicable to the allegations herein have been tolled.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Breach of Express Warranty
### (on behalf of Plaintiff and all Classes)

72.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

73.     In connection with its sale of the Pressure Cooker, Maxi-Matic expressly warranted that it was free from defects, made for years of dependable operation, and made from merchantable materials and workmanship.

74.     In Maxi-Matic's "Owner's Manual," which accompanied the sale of the Pressure Cooker to consumers, Maxi-Matic expressly represented that: "The digitally controlled and automatic pressure cooker uses advanced technology so you and your and family can enjoy the benefits of better, faster and healthier cooking." Ex. A.

75.     Further, the manual expressly represented that "It's the easiest pressure cooker to use on the market. It may seem like a complicated unit but rest assured, this pressure cooker is simple to use, makes meals quick and easy, and overall it saves you money!" Ex. A.

76.     The Owner's Manual further states: "It is warranted to the original purchaser to be free from any manufacturing defects under normal use and conditions for (1) year, cord excluded. This warranty applies only to the original purchaser of the product." Ex. A.

77.     The Owner's Manual provides: "At its sole discretion, Maxi-Matic will either repair or replace the product found to be defective during the warranty period." Ex. A.

78.     Furthermore, in its Owner's Manual and other promotional materials, Maxi-Matic represents that the Pressure Cooker contains built-in safety features. Specifically, Maxi-Matic represents that "[a]s a safety feature, the lid will not

open unless all pressure is released." Ex. A.

79. The Pressure Cooker is defectively designed as a whole unit and is covered by Maxi-Matic's Limited Warranty, set forth above.

80. Each Pressure Cooker has an identical or substantially identical warranty.

81. Plaintiff and the Class have privity of contract with Maxi-Matic through their purchase of the Pressure Cooker, and through the express written and implied warranties that Maxi-Matic issued to its customers. Maxi-Matic's warranties accompanied the Pressure Cooker and were intended to benefit consumers of the Pressure Cooker. To the extent Class members purchased the Pressure Cooker from third-party retailers, privity is not required because the Class members are intended third-party beneficiaries to the contracts between Maxi-Matic and third-party retailers.

82. The express written warranties covering the Pressure Cooker were a material part of the bargain between Maxi-Matic and consumers. At the time it made these express warranties, Maxi-Matic knew of the purpose for which the Pressure Cooker was to be used.

83. Maxi-Matic breached its express warranties by selling Pressure Cookers that were, in actuality, not free of defects, not made for years of dependable operation, not made from merchantable material and workmanship, and could not be used for the ordinary purpose of preparing meals at home. Maxi-Matic breached its express written warranties to Plaintiff and Class members in that the Defect with the Pressure Cookers is present at the point of sale, creating a serious safety risk to Plaintiff and Class members.

84. The Pressure Cookers that Plaintiff and Class members purchased were subject to the Defect and can cause personal injuries, and for some Class members including Plaintiff already have caused significant personal injuries.

85. Maxi-Matic expressly warranted in writing that it would repair or

replace any defect in the Pressure Cooker, or refund the purchase price of the Pressure Cooker if repair or replacement was not feasible.

86.     Maxi-Matic breached its express warranty to repair or replace the defective Pressure Cooker when it failed to do so, despite its knowledge of the Defect and/or despite its knowledge of alternative designs, materials, and/or options for manufacturing the Pressure Cooker.

87.     To the extent that Maxi-Matic has repaired or replaced the defective parts, the warranty of repair or replacement fails in its essential purpose because it is insufficient to make Plaintiff and Class members whole and/or because Maxi-Matic has failed to provide the promised remedy within a reasonable time.

88.     Many of the damages resulting from the defective Pressure Cooker cannot be resolved through the limited remedy of repair or replacement, as incidental and consequential damages have already been suffered due to Maxi-Matic's conduct as alleged herein.

89.     Accordingly, recovery by Plaintiff and Class members is not limited to the limited warranty of repair or replacement, and they seek all remedies allowed by law.

90.     Upon information and belief, Maxi-Matic received further notice and has been on notice of the Defect and of its breaches of express and implied warranties through customer warranty claims reporting problems with the Pressure Cooker, customer complaints, and its own internal and external testing.

91.     Despite having notice and knowledge of the Defect, Maxi-Matic failed to provide Defect-free Pressure Cookers to Plaintiff and Class members, failed to provide free repairs of the defective Pressure Cooker, and failed to provide any form of compensation for the damages resulting from the Defect.

92.     As a result of Maxi-Matic's breach of its express written warranties, Plaintiff and Class members have suffered damages.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Warranty of Merchantability**
**(On behalf of Plaintiff and all Classes)**

93.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

94.     The Pressure Cooker purchased by Plaintiff and Class members was defectively designed and manufactured and posed a serious and immediate safety risk to consumers and the public.

95.     All of the Pressure Cookers sold by Maxi-Matic left Maxi-Matic's facilities and control with a Defect caused by a defective design incorporated into the manufacture of the Pressure Cookers.

96.     The Defect placed and/or places Plaintiff and Class members at a serious safety and property damage risk upon using the Pressure Cooker in their homes.

97.     The law imposes a duty requiring manufacturers or sellers of a product to ensure that the product is merchantable and reasonably fit for the ordinary purposes for which such a product is used, and that the product is acceptable in trade for the product description.   This implied warranty of merchantability is part of the basis of the bargain between Maxi-Matic and consumers, including Plaintiff and the Class members.

98.     Notwithstanding the aforementioned duty, at the time of delivery, Maxi-Matic breached the implied warranty of merchantability in that the Pressure Cooker is defective and poses a serious safety risk, was not fit for the ordinary purposes for which it was used, would not pass without objection, and failed to conform to the standard performance of like products.

99.     Maxi-Matic knew, or should have known, that the Pressure Cooker posed a safety risk and was defective, and that it breached the implied warranties at the time it sold the Pressure Cooker to Plaintiff and Class members or otherwise

placed them into the stream of commerce.

100.   Plaintiff and Class members have privity of contract with Maxi-Matic through their purchase of the Pressure Cooker from Maxi-Matic, and through the express written and implied warranties that Maxi-Matic issued to its customers.  Maxi-Matic's warranties accompanied the Pressure Cooker and were intended to benefit the ultimate consumers.  To the extent that Class members purchased the Pressure Cooker from third-party retailers, privity is not required because Plaintiff and Class members are intended third-party beneficiaries to the contracts between Maxi-Matic and the third-party retailers.

101.   As a direct and proximate result of Maxi-Matic's breach of the implied warranties, Plaintiff and Class members bought the Pressure Cooker without knowledge of the Defect or the serious safety risks.

102.   As a direct and proximate result of Maxi-Matic's breach of the implied warranties, Plaintiff and Class members purchased unsafe Pressure Cookers that were not fit to be used for their intended purpose of preparing food in a residential setting.

103.   Plaintiff notified Maxi-Matic of its breach of the implied warranties shortly after their Pressure Cookers failed to perform as warranted as a result of the Defect.

104.   Maxi-Matic received further notice of the Defect and of its breaches of express and implied warranties through customer warranty claims reporting problems with the Pressure Cooker, customer complaints, and its own internal and external testing.   Maxi-Matic also received notice through plaintiffs who complained to Maxi-Matic about the Defect as described above.

105.   Despite having notice and knowledge of the Defect, Maxi-Matic failed to provide Defect-free Pressure Cookers to Plaintiff and Class members, failed to provide free repairs of the defective Pressure Cooker, and failed to provide any form of compensation for the damages resulting from the Defect.

106.   As a direct and proximate result of Maxi-Matic's breach of the implied warranties, Plaintiff and Class members have suffered damages.

### THIRD CLAIM FOR RELIEF
### Negligence
### (On behalf of Plaintiff and all Classes)

107.   Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

108.   Maxi-Matic owed a duty to Plaintiff and Class members to design, manufacture, produce, test, inspect, market, distribute, and sell the Pressure Cooker with reasonable care and in a workmanlike fashion, and also had a duty to protect Plaintiff and Class members from foreseeable and unreasonable risks of harm.   Maxi-Matic breached that duty by, among other things, defectively designing, manufacturing, testing, inspecting, and selling the Pressure Cookers.

109.   Maxi-Matic also acted unreasonably in failing to provide appropriate and adequate warnings and instructions, and the failure to provide adequate warnings and instructions was a proximate cause of the harm for which damages are sought.

110.   In addition, at the time the Pressure Cookers left Maxi-Matic's control without an adequate warning or instruction, they constituted unreasonably dangerous articles that Maxi-Matic knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable consumer.   Maxi-Matic knew or should have known that the Pressure Cooker it designed, manufactured, produced, tested, inspected, marketed, distributed, and/or sold would, during ordinary and foreseeable use, create an unreasonable safety risk and fail to perform as intended.

111.   At the time of the design or manufacture of the Pressure Cooker, Maxi-Matic acted unreasonably in designing or manufacturing them, and this conduct proximately caused the harm for which damages are sought.

112.   Furthermore, at the time the Pressure Cookers left the control of Maxi-Matic, it unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design that could have been adopted and that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the Pressure Cooker.  At the time the Pressure Cookers left the control of Maxi-Matic, their design was so unreasonable that no reasonable person, aware of the relevant facts, would use or purchase them.

113.   Maxi-Matic knew or should have known that the Pressure Cooker created an unreasonable safety risk as a result of the Defect, and that the Defect could cause personal injury and/or property damage.

114.   Based on its knowledge, Maxi-Matic had a duty to disclose to Plaintiff and Class members the serious safety risks posed by the Pressure Cooker, in addition to a duty to disclose the nature of the Defect.

115.   Maxi-Matic had a further duty not to put the defective products on the market, had a continuing duty to remove its unsafe Pressure Cooker from the market, and also had a duty to seek a recall from consumers.

116.   Maxi-Matic failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of the Pressure Cooker by, among other things, failing to design and manufacture the Pressure Cooker in a manner to ensure that, under normal and intended usage, a serious safety risk such as the one posed by the Defect did not occur.

117.   Maxi-Matic failed to exercise reasonable care in failing to warn or to warn adequately and sufficiently, either directly or indirectly, of the Defect.

118.   Maxi-Matic failed to exercise reasonable care when it knew of the safety risks the Defect posed and actively concealed those risks from Plaintiff and Class members.

119.   Maxi-Matic failed to exercise reasonable care when it knew of the safety risks posed by the Defect and failed to replace, repair, or recall Pressure Cookers it knew or should have known were unsafe and defective

120.   As a direct and proximate result of Maxi-Matic's negligence, Plaintiff and the Class members bought the Pressure Cooker without knowledge of the Defect or of the serious safety risk, and purchased an unsafe product that could not be used for its intended purpose.

121.   As a direct and proximate result of Maxi-Matic's negligence, Plaintiff and the Class members have suffered damages.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On behalf of the Plaintiff and all Classes)**

122.   Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

123.   This alternative claim is asserted on behalf of Plaintiff and Class members to the extent there is any determination that any contracts between Class members and Maxi-Matic do not govern the subject matter of the disputes with Maxi-Matic, or that Plaintiff does not have standing to assert any contractual claims against Maxi-Matic.

124.   Plaintiff and Class members conferred a benefit on Maxi-Matic, and Maxi-Matic had knowledge of this benefit.  By its wrongful acts and omissions described herein, including selling the defective Pressure Cooker, Maxi-Matic was unjustly enriched at the expense of Plaintiff and Class members.

125.   Plaintiff's and Class members' detriment and Maxi-Matic's enrichment were related to and flowed from the wrongful conduct alleged in this Complaint.

126.   It would be inequitable for Maxi-Matic to retain the profits, benefits, and other compensation obtained from its wrongful conduct as described herein in

connection with selling the Pressure Cooker.

127.   Plaintiff and Class members seek restitution from Maxi-Matic and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Maxi-Matic from its wrongful conduct, and establishing a constructive trust from which Plaintiff and Class members may seek restitution.

**FIFTH CLAIM FOR RELIEF**
**Strict Product Liability–Manufacturing and Design Defect and Failure to Warn**
**(On behalf of Plaintiff and all Classes)**

128.   Plaintiff re-alleges and incorporate the preceding paragraphs as if fully set forth herein.

129.   Maxi-Matic designed, developed, tested, manufactured, distributed, marketed, and/or sold the Pressure Cooker to Plaintiff and the Class.

130.   The Pressure Cookers were defective in their manufacture and design, and contained the Defect when they left Maxi-Matic's control.

131.   Maxi-Matic could have implemented or adopted reasonable and feasible alternative designs, materials, and/or manufacturing methods to remedy the Defect but failed to do so. This is evidenced by their resolution of the Defect in subsequent Pressure Cooker models.

132.   The risk of harm associated with the Pressure Cooker outweighs its intended and foreseeable benefit.  The ability to quickly prepare meals at home does not outweigh the risk of the Pressure Cooker erupting and inflicting significant personal injury.

133.   Maxi-Matic's Pressure Cooker reached Plaintiff and the Class members in the same condition as when it left Maxi-Matic's control.

134.   Maxi-Matic knew or should have known that the Pressure Cookers were defective and posed a real risk of trapping built-up pressure and erupting

during their regular use.

135.   The Pressure Cooker was more dangerous than a reasonably prudent consumer would expect when used in an intended and reasonably foreseeable manner.

136.   Plaintiff and the Class members were unaware of the risk of harm posed by the Pressure Cooker.

137.   Maxi-Matic failed to inform Plaintiff and Class members as to the Pressure Cooker's susceptibility to erupt, causing scalding hot contents to discharge, resulting in significant personal injury and/or property damage.

138.   Maxi-Matic failed to provide a warning that a reasonable manufacturer would have provided in light of the likelihood that the Pressure Cooker would erupt and in light of the serious harm that may result from the Defect.

139.   The Pressure Cooker was defective due to inadequate warnings, inadequate inspection and testing, and/or inadequate reporting concerning the results of quality control testing, or lack thereof.

140.   Had Plaintiff and Class members been adequately warned concerning the likelihood that the Pressure Cooker would erupt, they would have taken steps to avoid damages by not purchasing them.

141.   Upon learning that its Pressure Cooker could trap built-up pressure and erupt, Maxi-Matic had a duty to warn consumers of the possibility that the Defect could cause severe injury to persons and/or property, even when used for their intended purpose.

142.   As a direct and proximate result of the defective condition of the Pressure Cooker, Plaintiff and Class members have incurred or are at risk of incurring damages to their persons and to their personal and/or real property in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Fla. Stat. § 501.201 *et seq.*)
### (On behalf of the Florida Class)

143.   Plaintiff, individually and on behalf of all others similarly situated, adopt and incorporate by reference all foregoing allegations as though fully set forth herein.

144.   This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq.* (FDUTPA).  The stated purpose of this Act is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." *Id*. §501.202(2).

145.   Plaintiff and all Class members are "consumers" and the transactions at issue in this Complaint constitute "trade or commerce" as defined by FDUTPA. *See id*. § 501.203(7)-(8).

146.   FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Id. § 501.204(1).

147.   Maxi-Matic violated FDUTPA by engaging in the conduct described herein, which constitutes unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

148.   In violation of FDUTPA, Maxi-Matic employed fraud, deception, false promise, misrepresentation, and the knowing concealment, suppression, or omission of material facts in its sale and advertisement of the Pressure cookers in the State of Florida.

149.   Maxi-Matic has engaged in unfair, deceptive, and unconscionable practices by:   (a) marketing and selling the defective Pressure Cooker; (b) intentionally failing to disclose and/or concealing the known Defect and risks; and

(c) warranting that the Pressure Cooker is free from defects and possess built-in safety features.

150.   Maxi-Matic warranted and represented that the Pressure Cooker was safe and free from defects in materials and workmanship and that it possessed built-in safety features, including a lid safety device, which would influence a reasonable consumer's decision whether to purchase the Pressure Cooker.

151.   Maxi-Matic's failure to warn of the Defect was a material omission that would influence a reasonable consumer's decision whether to purchase the Pressure Cooker.

152.   Plaintiff and the Florida Class members were aware of Maxi-Matic's representations regarding the characteristics, qualities, and standards of the Pressure Cooker due to the representations contained in the Owner's Manual and other promotional materials relating to the Pressure Cooker.

153.   Plaintiff and the Florida Class members relied on the truth of Maxi-Matic's warranties and representations concerning the Pressure Cookers and they suffered personal and property damages as result of this reliance.

154.   Had Plaintiff and the Florida Class members been adequately warned concerning the Defect and the likelihood that the Pressure Cooker would erupt, they would have taken steps to avoid damages by not purchasing them.

155.   Maxi-Matic's actions in connection with the manufacturing and distributing of the Pressure Cookers as set forth herein evidences a lack of good faith, honesty in fact, and  observance of fair dealing, so as to constitute unconscionable commercial practices in violation of the FDUTPA.

156.   Maxi-Matic has acted and continues to act in the face of prior notice as to the existence of the Defect.

157.   As a direct and proximate result of Maxi-Matic's violations of the FDUTPA, Plaintiff and the Florida Class members have been injured in an amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF**
**Injunctive and Declaratory Relief**
**(On behalf of Plaintiff and all Classes)**

158.   Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

159.   There is an actual controversy between Maxi-Matic, Plaintiff, and Class members concerning the existence of the Defect in the Pressure Cooker.

160.   Pursuant to 28 U.S.C. § 2201, this Court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.".

161.   Accordingly, Plaintiff and Class members seek a declaration that the Pressure Cooker has a common Defect in its design and/or manufacture.

162.   Additionally, Plaintiff and Class members seek a declaration that this common Defect poses a serious safety risk to consumers and the public.

163.   Maxi-Matic designed, manufactured, produced, tested, inspected, marketed, distributed, and sold the Pressure Cooker which contains a material and dangerous Defect as described herein, and continues to do so.

164.   Based upon information and belief, Maxi-Matic has taken no corrective action concerning the Defect, and has not issued any warnings or notices concerning the dangerous Defect, nor implemented a product recall.

165.   Plaintiff and Class members have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Defect. Maxi-Matic should be required to take corrective action to prevent further injuries, including:   (a) issuing a nationwide recall of the Pressure Cooker; (b) issuing warnings and/or notices to consumers and the Class concerning the Defect; and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective Pressure Cooker.

///

## EIGHTH CLAIM FOR RELIEF
### Violation of the California False Advertising Law ("FAL")
### (on Behalf of Plaintiff and all Classes)

166.   Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

167.   Plaintiff brings this claim individually and on behalf of the National Class. The conduct described herein took place within the State of California and constitutes deceptive or false advertising in violation of California Business and Professions Code § 17500.

168.   California Business and Professions Code § 17500 prohibits deceptive or misleading practices in connection with advertising or representations made for the purpose of inducing, or which are likely to induce, consumers to purchase products.

169.   Maxi-Matic, when it marketed, advertised, and sold the Pressure Cookers, represented to Plaintiff and Class Members that the Pressure Cookers were free of manufacturing defects, despite the fact that the Pressure Cookers were defective and prone to failure.

170.   At the time of its misrepresentations, Maxi-Matic was either aware that the Pressure Cookers were defective or was aware that it lacked the information and/or knowledge required to make such a representation truthfully. Maxi-Matic concealed, omitted, and failed to disclose this information to Plaintiff and Class Members.

171.   Maxi-Matic's descriptions of the Pressure Cookers were false, misleading, and likely to deceive Plaintiff and other reasonable consumers.

172.   Maxi-Matic's conduct therefore constitutes deceptive or misleading advertising.

173.   Plaintiff has standing to pursue claims under the FAL as she reviewed and relied on Maxi-Matic's advertising and marketing materials

regarding the Pressure Cookers.

174.   In reliance on the statements made in Maxi-Matic's advertising and marketing materials and Maxi-Matic's omissions and concealment of material facts regarding the quality of the Pressure Cookers, Plaintiff and Class Members purchased the Pressure Cookers.

175.   Had Maxi-Matic disclosed the true defective nature of the Pressure Cookers, Plaintiff and Class Members would not have purchased the Pressure Cookers.

176.   As a direct and proximate result of Defendant's violations of the California Business and Professions Code as set forth above, Plaintiff and the Class Members seek restitution of any monies wrongfully acquired or retained by Defendant by means of its deceptive or misleading representations, including monies already obtained from Plaintiffs and Class Members under § 17500.

## NINTH CAUSE OF ACTION
### Violation of the California Consumer Legal Remedies Act
### (on Behalf of Plaintiff and all Classes)

177.   Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

178.   The conduct described herein took place in the State of California and constitutes unfair methods of competition or deceptive acts or practices in violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code § 1750, *et seq.*

179.   The CLRA applies to all claims of all the Class Members because the conduct which constitutes violations of the CLRA by Defendant occurred within the State of California.

180.   Plaintiff and Class Members are "consumers" as defined by Civil Code § 1761(d).

181.   Maxi-Matic is a "person" as defined by Civil Code § 1761(a)

182.   The Pressure Cookers qualify as "goods" as defined by Civil Code § 1761(a).

183.   Plaintiff and the Class Members' purchases of the Pressure Cookers are "transactions" as defined by Civil Code 25 §1761(e).

184.   As set forth below, the CLRA deems the following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer as unlawful.

       a.   "Representing that goods . . . have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have." Civil Code § 1770(a)(5); and

       b.   Representing that good . . . are of a particular standard, quality, or grad, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7)

185.   Maxi-Matic engaged in unfair competition or unfair of deceptive acts or practices in violation of civil code §§ 1770(a)(5) and (a)(7) when it represented, through its advertising and other express representations, that the Pressure Cookers had benefits or characteristics that they did not actually have.

186.   As detailed throughout this Complaint, Maxi-Matic has repeatedly engaged in conduct deemed a violation of the CLRA, and has made representations regarding benefits or characteristics the defective Pressure Cookers did not in fact have, and represented the Pressure Cookers of a quality that was not true.

187.   The Pressure Cookers were not and are not "reliable," in that the products have a higher failure rate than other products in the industry. As detailed above, Defendant further violated the CLRA when it falsely represented that the Pressure Cookers have a certain standard or quality.

188.   As detailed above, Maxi-Matic violated the CLRA when it advertised

the Pressure Cookers with the intent not to sell them as advertised and knew that the Decking and Railings were not as represented.

189. Maxi-Matic's deceptive practices were specifically designed to induce Plaintiff and the Class Members to purchase or otherwise acquire the Pressure Cookers.

190. Maxi-Matic engaged in uniform marketing efforts to reach Class Members, their agents, and/or third parties upon whom they relied, to persuade them to purchase the Pressure Cookers. Maxi-Matic's website and advertisements contained numerous false and misleading statements regarding the quality and safety of the Pressure Cookers.

191. Defendant also omitted and concealed this information and material facts from Plaintiff and Class Members.

192. Through their purchase of the Pressure Cookers, Plaintiff and Class Members relied on Maxi-Matic's representations and omissions of material facts.

193. As a direct and proximate result of Defendant's violations of the CLRA, Plaintiffs and Class Members have suffered injury-in-fact and/or actual damage.

194. Pursuant to the provisions of the CLRA, Plaintiff will give notice of the defect to Honda and upon the expiration of the period described in Cal. Civ. Code Section 1782, subd. (d), and Cal. Civ. Code § 1770(a)(5), (7). Plaintiff will amend this Complaint to state a claim for damages under the CLRA.

## TENTH CAUSE OF ACTION
### Violation of the California Unfair Competition Law ("UCL")
### (on Behalf of Plaintiff and all Classes)

195. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

196. California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices." Maxi-Matic has

engaged in unlawful, fraudulent, and unfair business acts or practices in violation of the UCL.

197.   Defendant's conduct, as described herein, was and is in violation of the UCL. Maxi-Matic's conduct violates the UCL in at least the following ways.

a.   By knowingly and intentionally concealing from Plaintiff and Class Members that the Pressure Cookers suffer from a design defect while obtaining money from Plaintiff and Class Members;

b.   By marketing the Pressure Cookers as possessing safe and defect free locking devices that would not allow the Pressure Cookers to open while pressurized when in truth the lid locking mechanism as defective and would allow the Pressure Cookers to open while pressurized; and

c.   By correcting the defect in new product lines without issuing a recall of the defective Pressure Cookers, leaving inherently dangerous Pressure Cookers in homes across the country.

198.   Defendant's misrepresentations and omissions alleged herein caused Plaintiffs and the Class Members to make their purchases of the Pressure Cookers. Absent those misrepresentations and omissions, Plaintiffs and the Class Members would not have purchased the Pressure Cookers.

199.   Accordingly, Plaintiffs and Class Members have suffered injury in fact including lost money or property as a result of Defendant's misrepresentations and omissions.

200.   Plaintiff and Class Members seek to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant under Ca. Bus. & Prof. Code § 17200. Plaintiff and Class Members also request that this Court enter such orders or judgments as may be necessary to enjoin Maxi-Matic from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiffs and Class Members any money it acquired by unfair competition, including restitution

and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all causes of action so triable.

## PRAYER FOR RELIEF

Plaintiff, individually and on behalf of all others similarly situated, requests the Court enter judgment against Maxi-Matic, and accordingly requests the following:

a)      An Order certifying this action as a class action on behalf of the Nationwide Class and Florida Class;

b)      An Order appointing Plaintiff as the Class representative, and appointing the undersigned counsel as Class Counsel;

c)      A Declaration of the defect and that the warranty fails its essential purpose;

d)      An Order awarding injunctive relief by requiring Maxi-Matic, at its own expense, to issue corrective actions, including notification, recall, inspection, and, as necessary, repair and replacement of the Pressure Cooker;

e)      Payment to Plaintiff and all Class members of all damages associated with or caused by the defective Pressure Cooker, in an amount to be proven at trial;

f)      An award of attorneys' fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed on the Class;

g)      Interest as provided by law, including but not limited to pre-judgment and post-judgment interest as provided by rule or statute; and;

h)      Such other and further relief as this Court may deem just,

equitable, or proper.

Date: November 20, 2017

/s/ Deborah R. Rosenthal
Deborah R. Rosenthal (184241)
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
El Segundo, California 90245
Telephone: (310) 322-3555
Facsimile:  (310) 322-3655
drosenthal@simmonsfirm.com

Paul J. Hanly, Jr.
(*pro hac vice* to be submitted)
Mitchell M. Breit
(*pro hac vice* to be submitted)
**SIMMONS HANLY CONROY LC**
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949
phanly@simmonsfirm.com
mbreit@simmonsfirm.com

Gregory F. Coleman
(*pro hac vice* to be submitted)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com

Daniel K. Bryson
(*pro hac vice* to be submitted)
J. Hunter Bryson*
(*pro hac vice* to be submitted)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan St.

Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile: 919-600-5035
Dan@wbmllp.com
Hunter@wbmllp.com

*Attorneys for Plaintiff*