Deborah R. Rosenthal (#184241)
drosenthal@simmonsfirm.com
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
Los Angeles, CA 90245
Phone: (415) 536-3986

Greg F. Coleman*
greg@gregcolemanlaw.com
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: (865) 247-0080; Fax: (865) 522-0049

Daniel K. Bryson*
Dan@wbmllp.com
J. Hunter Bryson*
Hunter@wbmllp.com
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan St.
Raleigh, NC 27603
Tel: 919-600-5000; Fax: 919-600-5035
* admitted pro hac vice

*Attorneys for Plaintiffs Geniva O'Keefe
and Carol Tomlinson*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENIVA O'KEEFE, CAROL TOMLINSON, on behalf of themselves and all others similarly situated,<br>        Plaintiffs,<br>v.<br>PICK FIVE IMPORTS d/b/a MAXI-MATIC USA, INC.,<br>        Defendant. | Case No. 2:17-cv-08452-SVW-AFM<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Hearing Date:  April 16, 2018<br>Time:  1:30 p.m.<br>Dept. 10A<br>Judge:  Honorable Stephen V. Wilson |

1

# TABLE OF CONTENTS

Facts .......................................................................................................... 1

Legal Standard ......................................................................................... 2

Argument .................................................................................................. 3

I.  Plaintiffs have sufficiently alleged where the product was purchased. ................... 3

II.  California law should apply to Plaintiffs' claims. ....................................... 3

III.  Plaintiffs have sufficiently pleaded their claim for breach
of express warranty .......................................................................... 6

IV.  Plaintiffs have adequately pleaded their claim for breach
of implied warranty .......................................................................... 8

V.  Plaintiffs' unjust enrichment claim is appropriately asserted in the
alternative to their other claims. ...................................................... 9

VI.  Plaintiffs' negligence and strict liability claims. ................................. 10

VII.  Plaintiffs' FDUTPA claim has been adequately pleaded ......................... 10

    A.  Plaintiff O'Keefe has standing to pursue her FDUTPA claim. ............. 10

        1.  Non-purchasers have standing to pursue money damages
        under FDUTPA. ...................................................... 10

        2.  Ms. O'Keefe also has standing to pursue a FDUTPA claim for
        injunctive or declaratory relief. .............................. 14

2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

B.    Plaintiffs have sufficiently alleged a deceptive act, unfair practice, and causation .................................................................. 14

VIII. Plaintiffs have properly pleaded claims for injunctive and declaratory relief. ...... 17

IX.    Plaintiffs have sufficiently pleaded their fraud-related claims. .............................. 20

A.    Plaintiffs have standing because they have alleged they would not have purchased the Pressure Cookers had they known of the defect. .......................................................................................... 21

B.    Plaintiffs sufficiently allege Maxi-Matic's pre-sale knowledge of the Defect .................................................................................... 22

X.    Alternatively, Plaintiffs request leave to re-plead any claims upon which the Court grants Maxi-Matic's motion ................................................ 23

Conclusion and Prayer ........................................................................................ 23

-ii-

# TABLE OF AUTHORITIES

## Cases

*Ajose v. Interline Brands*, Inc., 187 F. Supp. 3d 899 (M.D. Tenn. 2016) ..................... 18, 19

*American Suzuki Motor Corp. v. Super. Ct.*, 37 Cal. App. 4th 1291 (Cal. Ct. App. 1995) ........................................................................................................................... 8

*Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306 (C.D. Cal. 2013) ............... 20

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 3

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) .......................... 9

*Baba v. Hewlett–Packard Co.*, No. 09–05946, 2010 WL 2486353 (N.D. Cal. June 16, 2010) ...................................................................................................................... 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 2

*Bias v. Wells Fargo & Co.*, 942 F.Supp.2d 915 (N.D. Cal. 2013) ................................ 8, 21

*Brand v. Hyundai Motor Am.*, 226 Cal. App. 45h 1538 (Cal. Ct. App. 2014) ................... 8

*Bruno v. Quten Research Inst.*, LLC, 280 F.R.D. 524 (C.D. Cal. Nov. 14, 2011) ................ 5

*Bruton v. Gerber Prod. Co.*, No. 12-CV-2412, 2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ...................................................................................................................... 5

*Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116 (Cal. Ct. App. 2008) .......................................................................................................... 7, 8

*City First Mortgage Corp. v. Barton*, 988 So.2d 82 (Fla. Dist. Ct. App.2008) ................... 11

*Cook, Perkiss & Liehe v. N. Cal. Collection Service*, 911 F.2d 242 (9th Cir.1990) ............... 23

*Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN (RBB), 2014 U.S. Dist. LEXIS 54410 (S.D. Cal. Apr. 16, 2014) ........................................................................... 5

*Dagher v. Ford Motor Co.*, 238 Cal. App. 4th 905 (Cal. Ct. App. 2015) .......................... 7

*Doe v. United States*, 58 F.3d 494 (9th Cir. 1995) ................................................... 23

*Eisen v. Porsche Cars North America, Inc.*, No. CV 11–9405 CAS, 2012 WL 841019 (C.D.Cal. Feb. 22, 2012) ............................................................................... 20

*Engurasoff v. Coca-Cola Co.*, 2014 WL 4145409 (N.D. Cal. Aug. 21, 2014) ................... 23

*Francis E. Parker Mem'l Home, Inc.*, 945 F. Supp. 2d 543 (D.N.J. May 20, 2013) ............ 18

*Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F.Supp.2d 1134 (M.D. Fla. Apr. 11, 2007) ..................................................................................................... 11

*Glenn v. Hyundai Motor Am.*, No. SACV152052DOCKESX, 2016 WL 7507766 (C.D. Cal. Nov. 21, 2016) ....................................................................................... 9, 10

*Gonzalez v. Corning*, 317 F.R.D. 443 (W.D. Pa. Mar. 31, 2016) ................................ 19

-iii-

*Gritzke v. M.R.A. Holding, LLC*, No. 4:01CV495-RH, 2002 WL 32107540  (N.D. Fla. Mar. 15, 2002) ............................................................................................11

*Hamby v. Ohio Nat'l Life Assur. Corp.*, No. 12-122, 2012 U.S. Dist. LEXIS 90737, 2012 WL 2568149 (D. Haw. June 29, 2012) ...................................................5

*Hauter v. Zogarts*, 534 P.2d 377 (Cal. 1975) ...........................................................7

*Himes v. Brown & Co. Sec. Corp.*, 518 So. 2d 937 (Fla. Dist. Ct. App. 1987) ............ 13, 14

*Hinson,* 2008 WL 360803 .........................................................................................11

*Hoffman v. 162 North Wolfe LLC*, 175 Cal. Rptr. 3d 820 (Ct. App. 2014) .......................21

*In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ......................................................................................21

*In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*, 22 F. Supp. 3d 1322 (N.D. Ga. 2014) .............................................................................................................18

*In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051 (N.D. Cal. Jan. 21, 2015) ..............................................................................................................9

*In re Tobacco II Cases*, 46 Cal.4th 298 (Cal. 2009) .....................................................21

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 754 F. Supp. 2d 1145 (C.D. Cal. Nov. 30, 2010) ....................................3

*James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecommunications, Inc.,* No. 3:07–cv–598–J–32MCR, 2008 WL 360803 (M.D. Fla. Feb. 8, 2008) ........................11

*Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168 (N.D. Cal. Aug. 29, 2017) ..............7

*Kasel v. Remington Arms Co.*, 101 Cal. Rptr. 314 (1972) ..............................................4

*Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339 (S.D. Fla. Jun. 24, 2009)..............14

*Klaxon Co. v. Senator Elec. Mfg. Co.*, 313 U.S. 487 (1941) ............................................4

*Klinger v. Weekly World News, Inc.,* 747 F.Supp. 1477 (S.D. Fla. Oct. 11, 1990) ...............14

*Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011) .........................................22

*Liehe v. N. Cal. Collection Service*, 911 F.2d 242 (9th Cir.1990)...................................23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ....................................................................................................................3

*Marsh v. First Bank of Del.*, No. 11-cv-05226-WHO, 2014 WL 554553 (N.D. Cal. Feb. 7, 2014) ...........................................................................................................4

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004) .....................................................9

*Metowski v. Traid Corp.*, 28 Cal. App. 3d 332 (Cal. Ct. App. 1972).................................6

*Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987 (N.D. Cal. 2013) ...........................20

*Nationwide Mut. Fire Ins. Co.,* 2011 WL 6752561 ......................................................18

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Niles Audio Corp. v. OEM Systems Co., Inc.*, 174 F.Supp.2d 1315 (S.D. Fla. Oct. 30, 2001) ..................................................................................................................11

*Orange Street Partners v. Arnold*, 179 F.3d 656 (9th Cir. 1999)..............................4

*Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708 (9th Cir. 2001) ..............23

*Palmer v. Apple Inc.*, No. 5:15-CV-05808-RMW, 2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ...................................................................................................21

*Park v. Thompson*, 851 F.3d 910 (9th Cir. 2017)......................................................3

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. Dec. 12, 2008)........4

*Reilly v. La. Pac. Corp.*, No. 6:12-cv-837-Orl-36GJK, 2013 U.S. Dist. LEXIS 190094 (M.D. Fla. Sep. 30, 2013) ................................................................15

*Roberts v. Electrolux Home Prods.*, 2013 WL 7753579 (C.D. Cal. Mar. 4, 2013)...8

*Rollins, Inc. v. Heller*, 454 So. 2d 580 (Fla. Dist. Ct. App. 1984)................... 12, 13

*Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168 (S.D. Cal. Feb. 8, 2012) ..........6

*Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221 (2014) ...........9

*Siever v. BWGaskets, Inc.*, No. 608CV-1388-ORL-19GJK, 2009 WL 528624 (M.D. Fla. Mar. 2, 2009) .............................................................................15

*Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ............................22

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995)......................................................18

*Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355, 2013 WL 1632697 (N.D. Cal. Apr. 16, 2013) .............................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

Defendant Pick Five Imports, Inc. d/b/a Maxi-Matic USA, Inc. ("Maxi-Matic") seeks dismissal under Rule 12 based upon on an interpretation of the First Amended Complaint ("FAC") that ignores the detailed and specific factual allegations it contains. The motion should be denied.

**FACTS**

Maxi-Matic designed, manufactured, marketed, and sold Elite Bistro Pressure Cookers, Model Number EPC-808 ("Pressure Cookers"), to Plaintiffs and Class Members. FAC ¶ 1, ECF No. 33.

When Maxi-Matic sold the Pressure Cookers to Plaintiffs, Maxi-Matic knew that the Pressure Cookers contained one or more design, materials, and/or manufacturing defects, yet sold them anyway.

The Pressure Cookers have a defective lid locking mechanism that allows the unit to pressurize even though the lid is not securely sealed, and also allows the lid to be rotated and removed when the Pressure Cooker remains dangerously pressurized ("the Defect").  FAC ¶ 3.

As evidenced by Plaintiff O'Keefe's injuries, this defect can cause the contents inside the Pressure Cooker to erupt and discharge scalding hot contents onto unsuspecting consumers, which can cause significant injuries. *Id.*

The Defect is present at the point of sale and unknown to the consumer, and can manifest during the expected useful life of the Pressure Cookers, while using the Pressure Cookers in their intended and reasonably foreseeable manner, creating an unreasonable risk of personal injury. *Id.* at 9.

Plaintiffs individually allege their Pressure Cookers suffered from the Defect. FAC ¶ ¶ 34-35, 44-45. In particular, both Plaintiffs noticed their Pressure Cookers would open, or were not sufficiently locked, despite dangerous pressure building up inside their units. *Id.*

-1-

The Defect poses a real and significant safety hazard to all users of the Pressure Cookers. Plaintiff O'Keefe's unit exploded and discharged scalding contents on her when attempting to open the Pressure Cooker's lid. *Id.* at ¶ 34. Plaintiff O'Keefe suffered multiple second and third degree burns as a result of the Defect. *Id.* at ¶ 36. Fortunately for Plaintiff Tomlinson, she noticed the Defect in her Pressure Cooker, and she stopped using it before she suffered any physical harm. *Id.* at ¶ 44.

Maxi-Matic knew or should have known of the Defect, and that it created an unreasonable safety risk, but chose to conceal it from unsuspecting customers. *Id.* at ¶¶ 5, 27, 51, 52, 55, 60, 103, 114, 117, 122, 123, 138. Maxi-Matic's knowledge of the Defect can be shown through its internal product testing, civil complaints filed against it, and online postings complaining the Pressure Cookers failed during normal use. *Id.* ¶ 56.

As will be discussed more fully below, these allegations sufficiently state claims for breach of express and implied warranty, negligence, unjust enrichment, strict product liability; requests for injunctive and declaratory relief; and for violations of California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA").

Accordingly, Plaintiffs respectfully request that this Court deny Maxi-Matic's motion in its entirety.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," such that the defendant receives "fair notice" of the claims against it.   To survive a motion to dismiss under Rule 12, a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (discussing Fed. R. Civ. P. 12).   The court must "accept the plaintiff's allegations as true and view them in the

-2-

light most favorable to her." *See Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017). Allegations of fraud must be pleaded "with particularity," but allegations of a defendant's knowledge or intent may be made "generally." Fed. R. Civ. P. 9(b); *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Within the context of Rule 9, a party is excused "from pleading [] intent under an elevated pleading standard" but must still include a "short and plain statement of the claim," as required under Rule 8. *Iqbal*, 556 U.S. at 687.

Although Plaintiffs bear the burden of establishing standing, "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.,* 754 F. Supp. 2d 1145, 1160 (C.D. Cal. Nov. 30, 2010) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

## ARGUMENT

### I.    Plaintiffs have sufficiently alleged where the product was purchased.

Plaintiffs First Amended Complaint states they purchased their Pressure Cookers online through the Home Shopping Network website and had them shipped to their homes. FAC ¶¶ 13-14, 29, 40. Plaintiffs reside in Lecanto, Florida. *Id.* at 13-14. Consequently, it is plainly obvious from the face of the First Amended Complaint that Plaintiffs purchased their Pressure Cookers in Florida. Even a cursory review of the First Amended Complaint shows that Maxi-Matic's contention that Plaintiffs are "obfuscating the state in which the pressure cookers were purchased" is objectively false. (Def. Mem. 6).

### II.    California law should apply to Plaintiffs' claims.

Maxi-Matic spends a considerable amount of its memorandum discussing why Florida law should govern Plaintiffs' claims. Maxi-Matic's arguments miss the mark and omit both relevant facts and applicable legal principles. The application of California law to most, if not all, of the Plaintiffs' claims is warranted, but where material facts are necessary to make an appropriate choice-of-law determination, such

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1   a decision is premature and should be delayed until the Plaintiffs' motion for class

2   certification.

3       A federal court sitting in diversity applies the choice-of-law rules of the forum

4   state. *Klaxon Co. v. Senator Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Marsh v. First Bank of*

5   *Del.*, No. 11-cv-05226-WHO, 2014 WL 554553, at *14 (N.D. Cal. Feb. 7, 2014)

6   ("When a federal court sitting in diversity hears state law claims, the conflicts laws of

7   the forum state are used to determine which state's substantive law applies." (quoting

8   *Orange Street Partners v. Arnold*, 179 F.3d 656, 661 (9th Cir. 1999)). The law of the

9   forum, "will be displaced only if there is a compelling reason for doing so." *Kasel v.*

10  *Remington Arms Co.*, 101 Cal. Rptr. 314, 327 (1972) (quoting Ehrenzweig, Conflict of

11  Laws (1962) section 213, page 555).  The forum's law is "applicable unless either the

12  plaintiff or the defendant has been forced into a forum devoid of any such contact as

13  would justify application of its own law." *Id.* "[S]o long as the requisite significant

14  contacts to California exist, a showing that is properly borne by the class action

15  proponent, California may constitutionally require the other side to shoulder the

16  burden of demonstrating that foreign law, rather than California law, should apply to

17  the class claims." *Marsh*, 2014 WL 554553 at *14 (citing *Parkinson v. Hyundai Motor Am.*,

18  258 F.R.D. 580, 598 (C.D. Cal. Dec. 12, 2008).

19      To measure significant contacts, district courts weigh various allegations in the

20  complaint.  The location of the defendant's headquarters is a factor, as well as where

21  the defendant resides or conducts business. *Marsh*, 2014 WL 554553 at *11. "As one

22  federal district court in California held when granting class certification, 'maintaining

23  corporate headquarters in California during the class period and selling approximately

24  30% of the allegedly misrepresented products in California' amounted to a 'significant

25  aggregation of contacts with California' even though the products were produced out-

26  of-state." *Id.* (quoting *Bruno v. Quten Research Inst.*, LLC, 280 F.R.D. 524, 538 (C.D. Cal.

27  Nov. 14, 2011).

28

-4-

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

As alleged in the Amended Complaint, Maxi-Matic is a foreign for-profit corporation, organized and existing under the laws of the State of California, FAC ¶ 15, and registered to conduct business in California. *Id.* ¶ 10. Maxi-Matic's principal office is located in City of Industry, California. *Id.* ¶ 15. Maxi-Matic designs, manufacturers, markets, and sells the Pressure Cooker online and through third-party retailers throughout the United States. *Id.* And importantly, Maxi-Matic's California headquarters serves as a repair center and hub for all product returns. The owner's manual that accompanies the Pressure Cookers lists the company's address on page 47: "Maxi-Matic, USA, 18401 E. Arenth Ave., City of Industry, CA 91748." (FAC Ex. A, p. 25). This is the same address provided for any product returns. (*Id.* at 26). The manual acknowledges that Maxi-Matic will decide whether to "repair or replace" a defective item once the item is "received by [Maxi-Matic's] warehouse" in California, and will ship the repaired or new item back to the consumer. (*Id.*) Maxi-Matic undoubtedly has "the requisite significant contacts to California."

The Court must determine whether a choice-of-law analysis is appropriately decided on Maxi-Matic's Rule 12 motion, which depends on the allegations and claims in the specific case. *See Czuchaj v. Conair Corp.*, No. 13-CV-1901-BEN (RBB), 2014 U.S. Dist. LEXIS 54410 (S.D. Cal. Apr. 16, 2014); *Hamby v. Ohio Nat'l Life Assur. Corp.*, No. 12-122, 2012 U.S. Dist. LEXIS 90737, 2012 WL 2568149, at *2 (D. Haw. June 29, 2012). California district courts have denied motions to dismiss nationwide class claims based on the need to conduct a case-specific choice-of-law analysis. *Bruton v. Gerber Prod. Co.*, No. 12-CV-2412, 2014 WL 172111, at *13 (N.D. Cal. Jan. 15, 2014) (denying foreign company's motion to dismiss nationwide class claims where plaintiffs asserted California consumer protection statutes on behalf of foreign class members who made out-of-state purchases of products); *Won Kyung Hwang v. Ohso Clean, Inc.*, No. C-12-06355, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) (A choice-of-law "inquiry is most appropriate at the class certification stage of the case, after the parties have engaged in discovery.").

-5-

Even if one assumes that Florida's law might apply to certain consumer protection claims, discovery is still required to determine the relevant facts and interests of each state. The Court should decline to dismiss Plaintiffs' claims on Maxi-Matic's Rule 12 motion to the extent that its motion is based on Maxi-Matic's premature choice-of-law analysis.

**III.   Plaintiffs have sufficiently pleaded their claim for breach of express warranty.**

Maxi-Matic focuses its attention on Florida law, arguing that Plaintiffs' claim for breach of express warranty fails under Florida law for certain specific reasons. (Def. Mem. 13-14.) However, because Maxi-Matic is located in California, and for the many other reasons noted above, *see supra* Section II., California law—not Florida law—applies here.

Where a plaintiff brings suit for breach of express warranty against a manufacturer, the plaintiff need not give pre-suit notice of its claim. *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. Feb. 8, 2012) (California Commercial Code Section 2607's requirement for pre-suit notice of breach of express warranty claims does not apply to claims brought against manufacturers of products). Moreover, where the claim is brought as part of a class action suit, California courts have found that notice likely is satisfied where there is proof that complaints have been brought by some consumers—even if not by all members of a given putative class. *Metowski v. Traid Corp.*, 28 Cal. App. 3d 332, 340 (Cal. Ct. App. 1972). Thus, although pre-suit notice is required for some breach of express warranty claims, *see* Cal. Comm. Code § 2607, notice is not required for Plaintiffs' claims here, either on behalf of themselves or of the putative class against the manufacturer.

Maxi-Matic also contends that Plaintiffs' claim fails because Plaintiffs have alleged only a design defect. (Def. Mem. 13.) This is simply wrong. While Maxi-Matic correctly notes that the express warranty covers manufacturing defects, FAC ¶ 80, Maxi-Matic ignores that Plaintiffs have, in fact, alleged both manufacturing and design

-6-

defects. *Id.* ¶¶ 18, 46, 98. So long as Plaintiffs allege a manufacturing defect, their claim for breach of express warranty will survive a motion to dismiss. *See Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1177-78 (N.D. Cal. Aug. 29, 2017). In *Johnson*, the defendant argued that its express warranty only covered manufacturing defects, and sought dismissal of the plaintiffs' express warranty claims by asserting the plaintiffs only alleged design defects. *Id.* at 1176-77. The *Johnson* court agreed that the express warranty only covered manufacturing defects, but nevertheless found that the plaintiffs' claim for breach of express warranty was sufficiently pleaded because the plaintiffs alleged defects in *both* design and manufacturing. *Id.* at 1177-78.

As in *Johnson*, Plaintiffs here had pleaded defects both in design and manufacturing. FAC ¶¶ 18, 46, 98. Therefore, Plaintiffs have pleaded a defect covered by the express warranty, *see id.* ¶ 80, and have sufficiently pleaded a claim for breach of the express warranty.

Maxi-Matic additionally asserts that Plaintiffs lack privity necessary to assert their claim for breach of express warranty. (Def. Mem. 14.) However, "[p]rivity is generally not required for liability on an express warranty because it is deemed fair to impose responsibility on one who makes affirmative claims as to the merits of the product, upon which the remote consumer presumably relies. *Cardinal Health 301, Inc. v. Tyco Electronics Corp.*, 169 Cal. App. 4th 116, 143-44 (Cal. Ct. App. 2008); *see also Hauter v. Zogarts*, 534 P.2d 377, 387 n.8 (Cal. 1975). Strict adherence to privity rules for express warranty causes of action has not been required in the products liability context. *Dagher v. Ford Motor Co.*, 238 Cal. App. 4th 905, 927 (Cal. Ct. App. 2015) (citing *Hauter*, 534 P.2d at 387 n.8; *Seely v. White Motor Co.*, 403 P.2d 145, 148 (Cal. 1965)). Although Plaintiffs do not allege that they are strictly in privity with Maxi-Matic, this does not bar their claim for breach of express warranty. No such requirement exists under California law in order to maintain a claim for breach of the express warranty associated with a product. *E.g.*, *Hauter*, 534 P.2d at 387 n.8; *Seely*, 403 P.2d at 148; *Cardinal Health*, 169 Cal. App. 4th at 143-44.

1    For these reasons, Plaintiffs have sufficiently pleaded their claim for breach of

2  express warranty and the Court should deny Maxi-Matic's motion on that claim.

### IV.    Plaintiffs have adequately pleaded their claim for breach of implied warranty.

5    Maxi-Matic first contends that Plaintiffs' claim for breach of implied warranty

6  fails because Plaintiffs are not in privity with Maxi-Matic, which Maxi-Matic asserts is

7  required for such a claim under Florida law.  (Def. Mem. 14.)  However, as discussed

8  *supra*, this Court should analyze Plaintiffs' claims under California law.  Maxi-Matic

9  acknowledges privity is not required for an implied warranty claim under California

10  law.  (Def. Mem. 7-8.)

11    In California, a breach of the implied warranty of merchantability means "the

12  product did not possess even the most basic degree of fitness for ordinary use." *Mocek*

13  *v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406, 7 Cal. Rptr. 3d 546 (2003) (citing Cal.

14  Com. Code § 2314(2)).  "Such fitness is shown merely by the product being in safe

15  condition and substantially free of defects." *Brand v. Hyundai Motor Am.*, 226 Cal. App.

16  45h 1538, 1546 (Cal. Ct. App. 2014) (quoting *American Suzuki Motor Corp. v. Super. Ct.*,

17  37 Cal. App. 4th 1291, 1296 (Cal. Ct. App. 1995).  "Goods are merchantable if they (a)

18  Pass without objection in the trade under the contract description; and (b) In the case

19  of fungible goods, are of fair average quality within the description; and (c) Are fit for

20  the ordinary purposes for which such goods are used; and (d) Run, within the

21  variations permitted by the agreement, of even kind, quality, and quantity within each

22  unit and among all units involved; and (e) Are adequately contained, packaged, and

23  labeled as the agreement may require; and (f) Conform to the promises or affirmations

24  of fact made on the container or label if any." *Roberts v. Electrolux Home Prods.*, 2013

25  WL 7753579, *4 (C.D. Cal. Mar. 4, 2013) (citing Cal. Com. Code § 2314(2)).  Plaintiffs

26  have alleged facts showing the Pressure Cookers did not satisfy these requirements.

27  Maxi-Matic next argues that Plaintiffs' implied warranty claim should be dismissed due

28  to a lack of pre-suit notice.  (Def. Mem. 14.  As discussed in Section III, *supra*, plaintiff

-8-

consumers are not required to provide pre-suit notice to manufacturers. "[F]ederal district courts in California have routinely held that plaintiffs are not required to provide pre-suit notice to a remote seller/manufacturer with whom they have not dealt." *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 78 F. Supp. 3d 1051, 1103 (N.D. Cal. Jan. 21, 2015) (citations omitted). Consequently, Plaintiffs have sufficiently pleaded their implied warranty claim, and this Court should deny Maxi-Matic's motion on that claim.

## V. Plaintiffs' unjust enrichment claim is appropriately asserted in the alternative to their other claims.

Rule 8 of the Federal Rules of Civil Procedure specifically authorizes claims asserted in the alternative, as well as inconsistent claims. Fed. R. Civ. P. 8(d)(2), (3). California specifically allows pleading unjust enrichment as an alternative to other claims. It is appropriate for Plaintiffs to assert equitable claims, such as unjust enrichment, even if there may be an adequate remedy at law through an award of monetary damages, e.g., for breach of a written warranty.

*Glenn v. Hyundai Motor Am.*, No. SACV152052DOCKESX, 2016 WL 7507766 (C.D. Cal. Nov. 21, 2016), is instructive. The California Court explained that,

> when a plaintiff alleges unjust enrichment, a court may "construe the cause of action as a quasi-contract claim seeking restitution." [*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)] (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)). Furthermore, "restitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was *procured by fraud* or is unenforceable or ineffective for some reason." (emphasis added) (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004)) (internal quotation marks omitted). Thus, "a claim for restitution is permitted even if the party inconsistently pleads a breach of contract claim that alleges the existence of an enforceable agreement." *Rutherford Holdings*, 223 Cal. App. 4th at 231.

*Glenn*, 2016 WL 7507766 at *5.

Maxi-Matic has challenged Plaintiffs' express and implied warranty claims based, among other arguments, on Plaintiffs' alleged lack of privity. Plaintiffs have also asserted claims based on Maxi-Matic's conduct in concealing and failing to disclose the

Defect *before* Plaintiffs bought the product – claims which are separate from Plaintiffs' warranty claims.   *See Glenn*, 2016 WL 7507766 at *6 (refusing to dismiss unjust enrichment claims because plaintiffs' allegations "describe the theory underlying a claim that ... [D]efendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request.")

At this preliminary stage of the litigation, the Court should decline to dismiss Plaintiffs' claims for unjust enrichment until the facts and claims of the Plaintiffs and putative class members can be more fully developed.

## VI.   Plaintiffs' negligence and strict liability claims.

Plaintiff Tomlinson has not alleged any claims for damage to other property or for bodily harm, so she does not object to the court dismissing her claims for negligence and strict liability without prejudice.   Maxi-Matic does not challenge Plaintiff O'Keefe's claims for negligence and strict liability — nor could they in light of the serious physical injuries she sustained — and thereby concede those claims were properly pleaded.   Additionally, other putative class members may have sustained physical injuries or property damage, or both, in light of the nature of the Defect.

## VII.   Plaintiffs' FDUTPA claim has been adequately pleaded.

### A.   Plaintiff O'Keefe has standing to pursue her FDUTPA claim.

Maxi-Matic argues that Ms. O'Keefe lacks standing to bring a FDUTPA claim because Ms. Tomlinson (her mother) purchased the Pressure Cookers, not Plaintiff O'Keefe.   Maxi-Matic argues that Ms. O'Keefe cannot claim or recover any damages as a non-purchaser under the statute. That is incorrect. Ms. O'Keefe has standing to pursue a FDUTPA claim for money damages as well as injunctive and declaratory relief.

1.   **Non-purchasers have standing to pursue money damages under FDUTPA.**

Maxi-Matic's argument fails because non-consumers have been allowed to pursue claims for damages under FDUTPA. *See, e.g., James D. Hinson Elec. Contracting Co., Inc. v. Bellsouth Telecommunications, Inc.*, No. 3:07-cv-598-J-32MCR, 2008 WL

-10-

360803, at *2–3 (M.D. Fla. Feb. 8, 2008); *Furmanite America, Inc. v. T.D. Williamson, Inc.*, 506 F.Supp.2d 1134, 1145–46 (M.D. Fla. Apr. 11, 2007) ("Fla. Stat. Section 501.211 provides that any person who has suffered a loss as a result of such practices may commence a private action for actual damages and possibly attorneys' fees and court costs"); *Gritzke v. M.R.A. Holding, LLC*, No. 4:01CV495-RH, 2002 WL 32107540 at *4 (N.D. Fla. Mar. 15, 2002) ("§ 501.211(2), as amended, merely requires a 'person' who 'has been damaged by [a] defendant's violation' of the statute"); *Niles Audio Corp. v. OEM Systems Co., Inc.*, 174 F.Supp.2d 1315, 1319-20 (S.D. Fla. Oct. 30, 2001) (concluding the 2001 amendment "was intended to make damages remedy available to anyone aggrieved by violation of statute"). Maxi-Matic's argument ignores the fact that FDUTPA was amended in 2001, and instead of the statute reading that "[i]n any individual action brought by a *consumer* who has suffered a loss as a result of a violation of this part, such *consumer* may recover actual damages, plus attorney's fees and court costs," it was changed to state that "[i]n any individual action brought by a *person* who has suffered a loss as a result of a violation of this part, such *person* may recover actual damages, plus attorney's fees and court costs." *See* Fla. Stat. § 501.211(2) (2007); *see also Hinson*, 2008 WL 360803 at *3. "Courts in this district have held that '[t]his amendment [changing consumer to person] demonstrates a clear legislative intent to allow a broader base of complainants who have been injured by violations of FDUTPA to seek damages, not just injunctive relief.'" *Id.*

All that is required at the pleading stage to state a "claim for damages under FDUTPA" is to allege "three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *City First Mortgage Corp. v. Barton*, 988 So.2d 82, 86 (Fla. Dist. Ct. App.2008). Ms. O'Keefe, like Ms. Tomlinson, alleged those elements. *See* FAC ¶¶ 13, 29-39, 147-61. Specifically, Ms. O'Keefe alleges that Maxi-Matic made "representations that the product was safe, functional, and ready for use" when in fact it was not. *Id.* at ¶¶ 32-34. Ms. O'Keefe relied on Maxi-Matic's unfair and deceptive representations and practices described in the FAC. *See e.g., id.* at ¶¶ 30, 32-33. As a

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

result of Maxi-Matic's unfair and deceptive practices, Ms. O'Keefe used the product as instructed only to have the pressure cooker's "scalding hot contents erupt[] out, spraying all over" her and her kitchen. *Id.* at ¶ 34. "Plaintiff O'Keefe suffered serious second and third degree burns" on her body. *Id.* at ¶ 36. "She has been to the emergency room on three occasions and has had to undergo numerous follow-up appointments in order for treatment and wound care." *Id.* She "lives with pain and discomfort from burn marks and has significant scarring from the scalding water that erupted from the Pressure Cooker." *Id.* at ¶ 37. Ms. O'Keefe, thus, sufficiently set forth her FDUTPA claim.

The fact that Ms. O'Keefe did not directly purchase her pressure cooker does not deprive her of standing to pursue her FDUTPA claim. Maxi-Matic does not cite any case under which a court dismissed a FDUTPA claim because a plaintiff did not directly purchase the product.

Maxi-Matic concedes that "Plaintiffs' Sixth Cause of Action for alleged violation of the FDUTPA states Plaintiffs suffered damages under the FDUTPA due to their purchases of Maxi-Matic's pressure cookers. (Doc. #33, ¶¶157, 158, 161.)" (Def. Mem. 16.) Yet Maxi-Matic then argues the type of monetary damages available under the statute and questions whether Plaintiff has any out-of-pocket expenses to recover. These are factual issues not necessary to plead Ms. O'Keefe's claim and not proper to address on a motion to dismiss. Even Maxi-Matic's cited cases demonstrate the factual nature of the issues which should not be addressed at the pleading stage. *See Rollins, Inc. v. Heller*, 454 So. 2d 580, 584–86 (Fla. Dist. Ct. App. 1984) (determining appeal of a final judgment, stating "[h]aving upheld the trial court's finding on the FDUTPA violation, we now must determine what damages are allowed by the Act."); *Himes v. Brown & Co. Sec. Corp.*, 518 So. 2d 937, 938–39 (Fla. Dist. Ct. App. 1987) ("affirm[ing] the trial court's final judgment entered after a bench trial").

Moreover, Maxi-Matic's authorities do not support their arguments. For example, Maxi-Matic, citing *Rollins*, contends that "the *only* damage a plaintiff can recover is the difference in the market value of the product between the condition in

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

which it was delivered and the market value in the condition in which it should have been delivered according to the contract of the parties." (Def. Mem. 16) (emphasis added). *Rollins* states that under Texas law,

> *Generally*, the measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.[citations omitted] *A notable exception to the rule may exist when the product is rendered valueless as a result of the defect–then the purchase price is the appropriate measure of actual damages.* [citation omitted]
>
> We hold that Florida's statutes should be interpreted, and actual damages measured, in a similar manner.

*Rollins*, 454 So. 2d at 585 (emphasis added). Thus, a plaintiff may be entitled to the purchase price of the product where a defect (like the one alleged by Ms. O'Keefe) renders the product valueless because it is unsafe to use. *Id.* Moreover, the *Rollins* court found that punitive damages may also be proper under certain circumstances, such as a showing of fraud. *Id.* at 586. *Rollins* also predates the 2001 amendment discussed above. *Rollins* evaluated whether the damages were the subject of a "consumer transaction," but the 2001 amendment also eliminated that language from the statute. *See Rollins*, 454 So. 2d at 584.

*Himes* is also of little help to Maxi-Matic. Maxi-Matic cites *Himes* for the proposition that "Plaintiff must have out-of-pocket losses in order to recover under FDUTPA." (Def. Mem. 16.) That is not true. *Himes* states, in relevant part:

> In Florida, *unless* the fact-finder is presented with evidence which will enable it to determine damages for lost profits with a reasonable degree of certainty, rather than by means of speculation and conjecture, the claimant may not recover such damages. [citations]. *Since Himes did not suffer any out-of-pocket damages, the trial court properly denied him recovery because his claimed damages for lost profits are speculative.* His only claim is that Brown's actions deprived him of anticipated profits because he would have sold (or purchased, in the case of the short sale) the securities at the optimal time and earned a profit.

*Himes*, 518 So. 2d at 938-39 (emphasis added). There has not been any discovery as to Ms. O'Keefe's out-of-pocket expenses (such as any expenses for her three ER visits or

follow-up medical care – *see* FAC ¶ 36), or any other damages she may be able to recover under FDUTPA, so Max-Matic's motion should be denied.

### 2. Ms. O'Keefe also has standing to pursue a FDUTPA claim for injunctive or declaratory relief.

Even if Ms. O'Keefe could not seek money damages under FDUTPA, she would still be able to pursue injunctive and declaratory relief. In order to state a claim for injunctive and declaratory relief under FDUTPA, a plaintiff must merely allege that defendant engaged in a deceptive act or practice and that plaintiff is an "aggrieved" person. Fla. Stat. § 501.211; *see Klinger v. Weekly World News, Inc.,* 747 F.Supp. 1477, 1480 (S.D. Fla. Oct. 11, 1990). "[A]nyone aggrieved" is a broad term which would certainly encompass Ms. O'Keefe. Where a plaintiff seeks money damages along with injunctive and declaratory relief, a court need not decide whether it is proper to pursue damages under the facts. *Kertesz v. Net Transactions, Ltd.*, 635 F. Supp. 2d 1339, 1350 (S.D. Fla. Jun. 24, 2009). It is sufficient to simply allege injunctive and declaratory relief as a remedy under the statute in order to pursue the claim. *Id.* Ms. O'Keefe sufficiently alleges her claim to injunctive and declaratory relief under FDUTPA, so her claim should not be dismissed.

### B. Plaintiffs have sufficiently alleged a deceptive act, unfair practice, and causation.

Maxi-Matic attempts to hold Plaintiffs to a heightened pleading standard for a claim which requires only notice pleading. "[T]he requirements of Rule 9(b) categorically do not apply to the claims under FDUTPA." *Harris v. Nordyne, LLC*, No. 14-CIV-21884, 2014 WL 12516076, at *4 (S.D. Fla. Nov. 14, 2014); *see also Reilly v. La. Pac. Corp.,* No. 6:12-cv-837-Orl-36GJK, 2013 U.S. Dist. LEXIS 190094, at *12 (M.D. Fla. Sep. 30, 2013). Thus, a FDUTPA claim based on deceptive and unfair trade practices, such as concealment and misrepresentation, need only comply with "general notice pleading requirements." *Id.*; *see also Siever v. BWGaskets, Inc.*, No. 608CV-1388-ORL-19GJK, 2009 WL 528624, at *3 n.1 (M.D. Fla. Mar. 2, 2009) (noting that Rule 9(b) applies only to FDUTPA claims grounded in fraud).

Under the "general notice pleading requirements" that are applicable to this type of FDUTPA claim, the particularity with which Plaintiffs plead their FDUTPA claim is sufficient.[1] With regard to the first required element, Plaintiffs allege that Maxi-Matic engaged in deceptive and unfair acts. In particular, Plaintiffs allege that "Maxi-Matic failed to adequately design, manufacture, and/or test the Pressure Cooker to ensure it was free from the Defect before offering it to sale to Plaintiffs and the Class, despite its duty to do so." FAC ¶ 46. Maxi-Matic then sold the product with the Defect which "poses a serious and immediate safety risk to consumers and the public." *Id.* at ¶ 47. Plaintiffs "were unaware of the Defect and could not reasonably be expected to discover the Defect until their Pressure Cookers failed." *Id.* at ¶ 52. Plaintiffs "expected to use the Pressure Cooker in their homes without putting their safety and property at risk." *Id.* Plaintiffs "expected Maxi-Matic to disclose any Defect that would prevent the Pressure Cooker from safely performing its intended purpose." *Id.* Indeed, "Maxi-Matic ha[d and has] a duty to protect consumers by warning them that the Defect poses unreasonable risks of personal injury and/or property damage." *Id.* at ¶ 50. Yet, Maxi-Matic "chose to conceal the existence of the Defect, continued to sell the Pressure Cooker, and failed to remove the Pressure Cooker from the marketplace." *Id.* at ¶ 51. "Maxi-Matic took these actions to realize the substantial financial benefits of selling the defective Pressure Cooker to the unsuspecting public." *Id.* "Moreover, Maxi-Matic continues to falsely represent through written warranties that the Pressure Cooker is free from defects, is of merchantable quality, and will perform dependably for years." *Id.* at ¶ 63. "Maxi-Matic has wrongfully placed on Plaintiffs and Class members the burden, expense, and difficulty involved in discovering the Defect, repairing and replacing the Pressure Cooker, and paying for

---

[1] While Plaintiffs allege that Maxi-Matic knew or should have known of the Defect*, see* FAC ¶¶ 5, 27, 51, 55, 60, 103, 114, 117, 123, 138, knowledge of a defect is not a required element of a FDUTPA claim.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    the cost of damages caused by the Defect." *Id.* at ¶ 65. These allegations sufficiently

2    allege unfair and deceptive acts.[2]

3        As to the second element, Plaintiffs allege causation. *See* FAC ¶¶ 6, 47, 55, 65,

4    88, 113, 115, 146, 161. In reasonable reliance on Maxi-Matic's representations, and

5    without knowledge of the undisclosed Defect, Plaintiffs and Class members purchased

6    and used the Pressure Cookers and suffered damages. *See* FAC ¶¶ 6, 28, 38, 45, 157,

7    178-179, 203. Had Plaintiffs known of the Defect, they would not have purchased the

8    Pressure Cookers or would have paid significantly less for them. *See e.g., id.* at ¶ 54;

9    *Harris*, 2014 WL 12516076 at *7 (holding causation adequately pleaded under

10   FDUTPA where it was alleged that class members believed products would function

11   as intended, defendant concealed defect, and "had class members known about the

12   defect, they would not have purchased or would have paid less for the systems.").

13       Maxi-Matic claims Plaintiffs cannot show "actual reliance," but that is not an

14   element of a FDUTPA claim and need not be pled. *See id.* ("Reliance is not required

15   for causation under FDUTPA."); *Davis v. Powertel, Inc.,* 776 So.2d 971, 973 (Fla. Dist.

16   Ct. App. 2000) ("A party asserting a deceptive trade practice claim need not show

17   actual reliance on the representation or omission at issue."). Maxi-Matic argues that

18   Plaintiffs do "not state any facts showing that the owner's manual and/or warranty

19   were made available to consumers as part of any advertising materials in order to

20

21   ─────────────────────
     [2]To the extent Maxi-Matic claims the warranty and owner's manual misrepresentations
22   are not disclosed prior to sale and, therefore, cannot induce Plaintiffs to buy the
     defective product, the argument is irrelevant. First, that is a factual issue not to be
23   decided on a motion to dismiss. Second, because the Defect is present at the time of
     sale and Plaintiffs allege that Maxi-Matic knew or should have known of the Defect,
24   Maxi-Matic's failure to disclose the Defect qualifies as an unfair act or practice. *See*
     *Harris*, 2014 WL 12516076 at *6 (listing cases and explaining that "the type of conduct
25   actionable under FDUTPA" is "'extremely broad,' and has been applied to class action
     claims alleging failure to disclose relatively benign product defects."); *see also Merrill*
26   *Lynch Business Financial Services, Inc. v. Performance Machine Systems USA, Inc.*, 2005 WL
     975773, *8 (S.D. Fla. Mar. 4, 2005) (Deception under FDUTPA can be "a
27   representation, omission, *or* practice that is likely to mislead the consumer acting
     reasonably in the circumstances, to the consumer's detriment.") (emphasis added).
28
     ─────────────────────
     **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

influence a reasonable consumer's purchase at the point of sale," and complains that "[t]he facts pled do not state that Plaintiff Tomlinson visited any websites or viewed any representation by Maxi-Matic prior to purchasing the pressure cookers" and "tends to suggest Plaintiff Tomlinson was most likely induced to purchase the pressure cooker from representations made by HSN." (Def. Mem. 17-18.) These arguments are premised on the incorrect assertion that reliance is an element of a FDUTPA claim, so they should be rejected.

Plaintiffs also allege the third required element: damages. Plaintiffs allege that they "have suffered damages, including, without limitation: (a) the purchase price of the Pressure Cooker, as Plaintiff and the Class would not have purchased the product had they been informed of the Defect; (b) their failure to receive the benefit of their bargain; (c) their overpayment for the Pressure Cooker; (d) the diminished value of the Pressure Cooker; (e) the costs of repair or replacement of the Pressure Cooker; (f) damages to real and/or personal property; and (g) damages for personal injuries." See FAC ¶ 28; see id. at ¶¶ 38, 45.  Moreover, Plaintiffs allege that "[t]he Pressure Cookers that Plaintiffs and Class members purchased were subject to the Defect and can cause personal injuries, and for some Class members including Plaintiff O'Keefe, already have caused significant personal injuries" as discussed above. *Id.* at ¶ 88. Consequently, Plaintiffs have adequately alleged damages. *See id.* at ¶¶ 7 ("Plaintiffs' Pressure Cooker failed…resulting in significant and painful personal injury and property damage."), 28, 38, 61, 65, 92, 96, 110, 125, 141, 146, 169.

Since Plaintiffs have more than adequately pleaded the elements of their FDUTPA claim, that claim should not be dismissed.

**VIII.  Plaintiffs have properly pleaded claims for injunctive and declaratory relief.**

Maxi-Matic seeks dismissal of Plaintiffs' declaratory relief claim, arguing Plaintiffs failed to allege any future injury, and focusing solely on the named Plaintiffs. While neither Ms. O'Keefe nor Ms. Tomlinson are likely to use their Pressure Cookers

-17-

in light of their knowledge of the Defect (especially in light of Ms. O'Keefe's injuries), they have nevertheless pleaded facts showing that declaratory and injunctive relief is appropriate in this action.

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether the declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). Courts presiding over class actions have "wide discretion to provide declaratory relief, independent of its provision via [Fed. R. Civ. P.] 23(b)(2)." *Francis E. Parker Mem'l Home, Inc.*, 945 F. Supp. 2d 543, 566 (D.N.J. May 20, 2013). Moreover, a declaration of a product defect and the danger associated with it is commonly requested and provided under the Declaratory Judgment Act. *See e.g.*, *id.* (requesting "declaratory relief as to the Class…[that] the [product] has a defect which results in premature failure"); *Ajose v. Interline Brands*, Inc., 187 F. Supp. 3d 899, 909 (M.D. Tenn. 2016) ("In the context of products liability class action cases, injunctive relief classes under Rule 23(b)(2) typically seek a declaration that a product is defective so that relief can be easily pursued once the defect manifests itself or causes damages."); *In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*, 22 F. Supp. 3d 1322, 1331–32 (N.D. Ga. 2014). Because Plaintiffs' requests for declaratory relief are typical of that requested and granted in products liability class action cases, it stands to reason that such a declaration does indeed declare the "rights, duties, and status or other legal relations between the parties." *Nationwide Mut. Fire Ins. Co.*, 2011 WL 6752561 at *6.

A declaration of defect means that "Rule 23(b)(3) class members are entitled to damages because the defect already manifested itself…, while Rule 23(b)(2) class members are guaranteed damages if the defect ever manifests and causes harm…." *Gonzalez v. Corning*, 317 F.R.D. 443, 526 (W.D.Pa. Mar. 31, 2016). Thus, "[t]he inclusion of an equitable relief class seeking declaratory relief accounts for the fact that not all individuals who own [the product at issue] have already experienced damage." *Ajose*, 187 F. Supp. 3d at 909. "Equitable relief is the most fitting remedy available to

-18-

individuals who own but have not yet experienced damage due to the [product at issue]." *Id.*

As with most products liability class actions, Plaintiffs' claims are brought with putative class members in mind. *See e.g.*, FAC ¶¶ 9, 66-74, 165-66. Additionally, Plaintiffs' have alleged that ongoing harm will occur in the absence of declaratory and injunctive relief:

- "Maxi-Matic is still selling the defective Pressure Cooker, concealing the Defect, failing to notify consumers of the Defect, and failing to recall the Pressure Cooker." (FAC ¶ 62).

- "When corresponding with customers, Maxi-Matic does not disclose that the Pressure Cooker suffers from the Defect. As a result, reasonable consumers, including Plaintiffs and Class members, purchased and used, and continue to purchase and use, the Pressure Cookers in their homes even though it is unsafe to do so." (FAC ¶ 64).

- "Maxi-Matic will continue to commit the unlawful practices alleged herein, and Class members will remain at an unreasonable and serious safety risk as a result of the defect." (FAC ¶ 73).

- "Plaintiffs and Class members have suffered actual damage or injury or are in immediate risk of suffering actual damage or injury due to the Defect. Maxi-Matic should be required to take corrective action to prevent further injuries, including: (a) issuing a nationwide recall of the Pressure Cooker; (b) issuingwarnings and/or notices to consumers and the Class concerning the Defect; and (c) immediately discontinuing the manufacture, production, marketing, distribution, and sale of the defective Pressure Cooker."  (FAC ¶ 169).

There are undoubtedly consumers who own a Pressure Cooker, but have yet to experience the Defect. Moreover, unlike some product liability class actions where the product at issue simply fails to work properly but presents no safety risk, the Defect in this case presents a real and significant safety hazard to unsuspecting users. These are imminent future injuries which were appropriately pleaded and adequately address the types of injury required for declaratory relief.

Not only has declaratory relief been properly pleaded, it would provide a measure of justice and "promote judicial economy by facilitating the[] [putative class

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

members'] damages claims, should they arise, rather than leaving them to wait for [the defect to occur] and then bring suit individually or petition to intervene in this action." *Ajose*, 187 F. Supp.3d at 909. Plaintiffs' declaratory and injunctive claims should be allowed to proceed.

### IX. Plaintiffs have sufficiently pleaded their fraud-related claims.

"[S]ellers can be liable for making affirmative misrepresentations as well as for failing to disclose defects in a product" for fraud-based claims. *See Baba v. Hewlett–Packard Co.*, No. 09–05946, 2010 WL 2486353, *3 (N.D. Cal. June 16, 2010) (internal quotations and citation omitted). Plaintiffs can plead either omission or affirmative misrepresentations and are not required to allege both. "An actionable omission can arise when the defendant had exclusive knowledge of material facts not known to the plaintiff." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 998 (N.D. Cal. Mar. 14, 2013) (internal citation and quotations omitted).

While fraud-based claims are subject to Rule 9(b) and generally require a plaintiff to plead time, place, and specific content of the alleged fraud, "[w]hen a claim rests on allegations of fraudulent omission, however, the Rule 9(b) standard is somewhat relaxed because a plaintiff cannot plead either the specific time of an omission or the place, as he is not alleging an act, but a failure to act." *Asghari v. Volkswagen Grp. of Am., Inc.*, 42 F. Supp. 3d 1306, 1325–26 (C.D. Cal. Nov. 4, 2013) (citation and quotations omitted); *see also Eisen v. Porsche Cars North America, Inc.*, No. CV 11–9405 CAS, 2012 WL 841019, *3 (C.D. Cal. Feb. 22, 2012) ("claims based on an alleged fraudulent omission or concealment can succeed without the same level of specificity required by a normal fraud claim"). A plaintiff need only "set forth an explanation as to why [the] omission complained of was false and misleading" to state a claim under Rule 9(b). *Bias v. Wells Fargo & Co.*, 942 F.Supp.2d 915, 932 (N.D. Cal. Apr. 25, 2013). As one court has explained:

> [A]fraud by omission or fraud by concealment claim can succeed without the same level of specificity required by a normal fraud claim. ... The natural consequence of such reasoning is, as the California Court of

Appeal has stated, that "reliance can be proven in a fraudulent omission case by establishing that had the omitted information been disclosed, the plaintiff would have been aware of it and behaved differently."

*In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *35 (N.D. Cal. May 27, 2016) (internal citations omitted).

> **A.** **Plaintiffs have standing because they have alleged they would not have purchased the Pressure Cookers had they known of the defect.**

Maxi-Matic argues Plaintiffs lack standing because Plaintiffs did not specifically allege that they saw and read a misrepresentation prior to purchase.[3] In *Clark v. LG Electronics U.S.A., Inc.*, 2013 WL 5816410 (S.D. Cal. Oct. 29, 2013), the court rejected the same argument explaining that "[defendant]'s reliance argument defies common sense and real-world business practice" because "[n]o [product] manufacturer would ever advertise its product to, in essence, consistently fail" or have problems resulting in "nonoperation." *Id.* at *6.

> Such advertising would be tantamount to an automobile manufacturer advertising its vehicle routinely stalls in freeway traffic, or a wireless telephone provider advertising a high rate of dropped calls. Such disclosures do not exist in the real world because they represent product or service failure. Product advertising is meant to identify and buttress product features and value, not denigrate and diminish those qualities. Under the unusual circumstances pled in this case, reliance may be established by [defendant]'s alleged failure to disclose at the point of purchase the alleged defects which, if true, would seem to negate the inherent purpose of the product.

*Id.* at *6. Thus, in *Clark*, the plaintiff's contentions that she would not have purchased the product had she known of the defect were sufficient to support her CLRA and UCL claims. *Id.*, at *6; *see also Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011).

---

[3] Reliance is not required for all of Plaintiffs' fraud-based claims. *See e.g.*, *In re Tobacco II Cases*, 46 Cal.4th 298, 312 (Cal. 2009) (the UCL fraudulent practice prong "has been understood to be distinct from common law fraud.... 'A [common law] fraudulent deception must be actually false, known to be false by the perpetrator and reasonably relied upon by a victim who incurs damages. None of these elements are required to state a claim for injunctive relief' under the UCL.").

1    Just like the plaintiff in *Clark*, Plaintiffs have alleged they would not have purchased

2    their Pressure Cookers had they known of the Defect.  FAC ¶ 28, 38, 45, 54, 179, 203.

3    Nor would Maxi-Matic ever advertise its product in a manner that would suggest the

4    Pressure Cookers could explode and burn the user.  In this way, Maxi-Matic

5    misrepresented the true quality and character of its product, and because the Defect

6    presented a safety risk, Maxi-Matic was required to disclose it.  *Wilson v. Hewlett-Packard*

7    *Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012).  As a direct and proximate result of the

8    misrepresentation, concealment, and failure to disclose, Plaintiffs have standing

9    because they suffered damage which they could have avoided if they had known about

10   the defect at the time they were considering purchasing the Pressure Cookers.

       **B.    Plaintiffs sufficiently allege Maxi-Matic's pre-sale knowledge of the**
11              **Defect.**

12          Plaintiffs have alleged Maxi-Matic knew or should have known of the Defect

13   before any of Plaintiffs' purchases of their Pressure Cookers. FAC ¶¶ 55-65. Maxi-

14   Matic's experience designing and selling the Pressure cookers illustrate that Maxi-Matic

15   knew or should have known of the Defect. *Id.* at ¶ 60. Plaintiffs also allege that there

16   were numerous other sources of information available to Maxi-Matic that illustrate

17   Maxi-Matic, knew or should have known the Pressure Cookers were defective; namely,

18   the litany of personal injury lawsuits filed against it regarding the Pressure Cookers, its

19   internal testing data, and online consumer complaints. *Id.* at ¶ 56. By alleging the

20   knowledge of which Maxi-Matic was directly aware, Plaintiffs have sufficiently alleged

21   that Maxi-Matic either knew or should have known of the existence of the Defect.

22   Therefore, Plaintiffs have sufficiently alleged Maxi-Matic's knowledge of the Defect at

23   the time Plaintiffs purchased their Pressure Cookers.

24          Consequently, the Court should deny Maxi-Matic's motion to dismiss Plaintiffs'

25   fraud-based claims under the FAL, UCL, and CLRA.

26

27

28                                              -22-

**X.  Alternatively, Plaintiffs request leave to re-plead any claims upon which the Court grants Maxi-Matic's motion.**

"In dismissing for failure to state a claim, 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (citing to *Cook, Perkiss & Liehe v. N. Cal. Collection Service*, 911 F.2d 242, 247 (9th Cir.1990); *see also Engurasoff v. Coca-Cola Co.*, 2014 WL 4145409 at *2 (N.D. Cal. Aug. 21, 2014) (citations omitted). This principle effectuates the public policy embodied in Rule 15(a)(2) of the Federal Rules of Civil Procedure, that courts "should freely give leave when justice so requires." The policy of freely allowing parties to amend their pleadings "is to be applied with extreme liberality." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001).

As discussed above, Plaintiffs assert that their claims have all been properly pleaded. If, however, the Court determines that Plaintiffs have failed to plead any of their claims with the requisite specificity, or that an essential substantive allegation is missing, Plaintiffs respectfully request that the Court grant them leave to amend their complaint to address any deficiencies.

### Conclusion And Prayer

For the reasons discussed herein, Plaintiffs respectfully pray that the Court deny Maxi-Matic's motion to dismiss in its entirety, or in the alternative, grant Plaintiffs leave to amend their complaint to re-plead any claims upon which the Court grants the motion.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Date: March 19, 2018

 _/s/ Deborah R. Rosenthal_
Deborah R. Rosenthal (#184241)
**SIMMONS HANLY CONROY LLC**
100 N. Sepulveda Blvd., Suite 1350
El Segundo, California 90245
Telephone: (310) 322-3555
Facsimile:  (310) 322-3655
drosenthal@simmonsfirm.com

Mitchell M. Breit
(admitted pro hac vice)
**SIMMONS HANLY CONROY LLC**
112 Madison Avenue
New York, New York 10016-7416
Telephone:  (212) 784-6400
Facsimile:  (212) 213-5949
phanly@simmonsfirm.com
mbreit@simmonsfirm.com

Gregory F. Coleman
(admitted pro hac vice)
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
greg@gregcolemanlaw.com

Daniel K. Bryson
(admitted pro hac vice)
J. Hunter Bryson
(admitted pro hac vice)
**WHITFIELD BRYSON & MASON LLP**
900 W. Morgan St.
Raleigh, NC 27603
Telephone: 919-600-5000
Facsimile: 919-600-5035
Dan@wbmllp.com
Hunter@wbmllp.com

*Attorneys for Plaintiffs*

-24-
**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**